No. 2,112.

E. P. FIGG, Appellant, v. ELI MAYO, L. H. FOOTE, AB. C. FREEMAN AND T. J. CLUNIE, Respondents.

FINDINGS.—PRACTICE.—It is a reprehensible practice to blend together, in the findings by the Court, the facts found and the conclusions of law.

IDEM.—When the facts are so obscurely found, or are so blended with legal con.. clusions, as to render it doubtful whether the facts are only hypothetically stated, it must be disregarded as a finding of facts.

IDEM.—PRESUMPTION.—When the findings are silent upon essential points, every presumption will be indulged in support of the judgment.

IDEM.—MEXICAN GRANTS.—STATUTE OF LIMITATIONS.—In an action involving rights under a Mexican grant, and also under the Statute of Limitations, if the findings be wholly silent as to the date of the final approval of the official survey, or of the entry upon the premises in controversy, it will be presumed that the survey was approved and the entry made at such times as would support the judgment.

STATUTORY CONSTRUCTION.—STATUTE OF LIMITATIONS.—ADVERSE POSSESSION.— The object of Section 10 of the Statute of Limitations is to define accurately under what conditions a possession shall be decreed adverse, when the party enters under a claim of title founded upon a written instrument, judgment or decree.

IDEM.—The party who invokes the benefit of that section in aid of his possession, must show that he entered not only under a claim of title, but it must also be exclusive of any other right.

IDEM.—TOWN LOTS.—A block of land in a town or city, which is represented on the plan or map of the city as surrounded by public streets, and divided in the center by an alley, and laid out in lots appropriately numbered, is within the spirit and letter of the exception of Section 10 of the Statute of Limitations.

APPEAL from the District Court of the Sixth District, Sacramento County.

The case is stated in the opinion.

*John Heard,* for Appellant.

The error of the Court below evidently arises from a misunderstanding of the exception contained in the tenth section of the Statute of Limitations. The tenth section of the Statute of Limitations down to the exception is but affirmative of the well settled principle of the common law.

The possession so obtained being construed as co-extensive with the grant in the deed if all the land granted were at the time of entry unoccupied. (See *Ford* v. *Wilson*, 35 Miss. 504, 505; *Grant* v. *Fowler*, 39 N. H. 104; *Farmer* v. *Fessenden*, 39 N. H. 281; *Ewing* v. *Burnett*, 11 Pet. 41; *Ellicott* v. *Pearl*, 10 Pet. 442; *Barr* v. *Gratz*, 4 Wheat. 422; *Royal* v. *Lisle*, 15 Ga. 545.)

Cases without number might be cited to this point. (See Angel on Lim. 2d ed. 417, 418; 2d Washburn on Real Prop. 2d ed. 508, Sec. 36, and authorities in note 3.) Such was the well settled American doctrine at the passage of the Act of Limitation. But as tracts granted by deeds were often divided into separate lots, not by ideal but by actual division, and the possession of one of the lots would not indicate any claim on different lots separated by visible means, such as fences, or occupied parcels between, and as the rule was well established that the entry upon a part under deed was equivalent to an entry of all that was unoccupied, the Legislature interposed the exception in the tenth section of the Act. Not, as the learned Judge intimated, that the tenth section was applicable to towns and the eleventh to the country. The term "divided into lots," used in the exception in the tenth section, evidently means actual physical division, not merely ideal divisions.

*Ramage & Smith* and *A. Compte, Jr.*, for Respondents.

CROCKETT, J., delivered the opinion of the Court:

This is an action to recover the north half of a square or block of land situate in the City of Sacramento, between N and O and Eleventh and Twelfth streets. The action was tried before the Court without a jury; and judgment having been rendered for the defendants on the findings, the plaintiff has appealed on the judgment roll alone. He claims that, on the facts as found by the Court, the judgment ought to have been for the plaintiff; and this is the only question for our decision.

Amongst the facts, the Court finds that the premises in controversy are included in a grant from the Mexican Government to Sutter, and that the land embraced in the grant was patented to Sutter by the Government of the United States in June, 1866, and that the defendants deraign title by regular mesne conveyance from Sutter. The findings are silent as to the date at which the final approved survey was made, on the confirmation of the title. The fact that the defendants are in possession, under a patent of the United States, founded on a confirmed Mexican grant, establishes a *prima facie* title in them, unless it has been overcome by other facts found by the Court. The plaintiff claims to have established a better title, founded on an exclusive adverse possession, commencing in 1855; and which is alleged to have continued without interruption down to the time of the defendants' alleged entry in 1868, shortly before the commencement of this action.

The facts in respect to the occupation of the plaintiff, as found by the Court, are, briefly, that in September, 1855, the plaintiff entered into the actual possession of the entire block, which was then inclosed with a substantial fence, and had a frame house on the south half of it; that the inclosure was kept up by the plaintiff, and the house was occupied by his tenant until the year 1862, when the fence was destroyed by a freshet, and the fence around the north half of said square was not rebuilt by plaintiff; but the premises in litigation lay open and unfenced until about April 21, 1868, when a skeleton fence was built partly by the plaintiff and partly by others. That the said premises had been so excavated by the grantors of the plaintiff that they were unfit for use until filled in again; that from 1862 until about the time the defendants entered, the plaintiff had requested and permitted the offal from neighboring stables to be deposited in said excavations, and, in the spring of 1868, planted celery on one of the lots forming the north half of the block; that said block, as laid down on the map or plan of the city, is divided into two equal portions by an alley running through it from east to west, and the north half of the block, as laid down on said map or plan, is divided into lots numbered

1, 2, 3, 4, and was separated from the south half by said alley way, when the city was first laid out, prior to 1851; "but it was not separated by any fence or mark on the surface of the earth."

There is no finding to the effect that the plaintiff entered under a deed or written instrument; but in its conclusion of law, the Court held that each lot, being a legal subdivision of the city, the continued possession of a part of the block did not confer upon the plaintiff a title to the whole, by possession and limitation, "although his entry was upon all, under a color and claim of title under a deed; and although said lots, one, two, three, four, were never separated by any fence or otherwise, and although said lots are unfit for use until they are filled in." We are not at liberty to treat this as a finding of fact, to the effect that the plaintiff entered under a deed for the whole block. It is not placed amongst the findings of fact, but amongst the conclusions of law; and, as we understand it, the Court intended only to say, that it was immaterial whether the plaintiff entered under a deed or not; and even if it be assumed that he did enter under such a deed, that it would not benefit him. We have had occasion, very often, to animadvert upon the practice of blending together in the findings, in a confused mass, the facts found, and the conclusions of law. But, from the example now before us, our previous admonitions appear to have had but little effect in correcting a most pernicious practice. In such cases, when the facts are so obscurely found, or are so blended with legal conclusions, as to render it doubtful whether the facts are only hypothetically stated, we must disregard it as a finding of fact.

But in this case, if it be assumed that the Court intended to find and did find that the plaintiff entered under a deed which was "a color and claim of title," I am unable to perceive how that fact can benefit him. From 1855 to 1862, he had the *actual* possession—the "*pedis possessio*," by means of a substantial inclosure of the whole block, and with a tenant residing in a house on the south half of it. During this period, he needed no entry, under color and claim of

title, to establish a constructive possession, because he had the actual possession of the whole block. But, during this period, how was it material as against Sutter and his grantees, whether the plaintiff entered under color or claim of title or not. ( The Statute of Limitation, as amended in 1855, was then in force, and was not running against the Sutter title, which was not finally confirmed by the issuance of the patent until June, 1866. By Section 7 of the statute, as amended in 1855 (Statutes 1855, p. 109), actions founded on titles derived from Spain or Mexico, might be prosecuted within five years from the time when the title was finally confirmed by the Government of the United States; and it has been repeatedly decided by this Court, that the confirmation referred to was the issuing of the patent; but since the passage of the Act of Congress of June 14, 1860, giving to a final approved survey the effect of a patent, we have held that the Statute of Limitations begins to run, in such cases, from the final approval of the survey. It is clear, then, that so long as Section 7 of the Statute of Limitations, as amended in 1855, remained in force, the statute did not begin to run against Sutter or his grantees, prior to the final approval of the official survey of his claim under the final decree of confirmation. But this section of the statute was amended in 1863 (Statutes 1863, p. 325); and by Section 6 of the amendatory Act, it was, amongst other matters, provided that where the title was derived from Spain or Mexico, and had not been finally confirmed more than five years before the passage of that Act, persons holding under the title were allowed five years from and after the passage of the Act, within which to commence actions founded on the title, or to make a defense based on the title ; and by another provision it was declared that final confirmation, within the meaning of the Act, shall be deemed to be the patent, or the final determination of the official survey, under the Act of Congress of June 14, 1860. In this case, the findings are wholly silent as to the date of the final approval of the official survey, or of the entry of the defendants upon the premises in controversy. The complaint alleges that the defendants entered on the 3d day of June, 1868 ; but the answer of the defendant, Clunie, avers

that his grantor, Freeman, "on or about the 24th day of July, 1867, peaceably and quietly, as he of right might do, entered in and upon said Lot No. 4, and took possession thereof, and fenced the same, and held the continued and peaceable possession thereof, until he conveyed the same to the defendant; and this defendant, on or about the 8th day of June, 1868, and in right of his ownership of said Lot No. 4, did enter upon the same, and build a house, and make other valuable improvements thereon." He disclaims title or possession as to the other lots. The answers of the defendants, Freeman and Foote, who claim, severally, lots numbered two and three, and disclaim as to the remainder, also aver a seizin and possession in themselves or grantors, long prior to June, 1868. The findings being silent on this point, the implied findings are in support of the judgment; and we must presume that the defendants or their grantors entered prior to 1868, and within less than five years next after the passage of the Act of April 18, 1863, on which we have been commenting. For the same reason, we must presume that the final approval of the official survey of Sutter's claim was within five years next after the passage of said Act, and that the defendants entered within five years after said approval. It results from these views, that the claim of the defendants, under the Sutter title, was not barred by the statute, even if it be conceded that the plaintiff entered in 1855, under color and claim of title, and had the *actual* possession of the whole block, up to the time of the entry by the defendants.

But on the findings, even though it be conceded that the plaintiff entered under a deed for the whole block, he has wholly failed to bring himself within sections ten and eleven of the Statute of Limitations. The Court finds the title to have been in Sutter and his grantees—and Section 9 of the Statute of Limitations provides, that "the occupation of lands by any other than the holder of the legal title, shall be deemed to have been under and in subordination to the legal title, unless it appear that the premises have been held and possessed *adversely* to such legal title for five years before the commencement of the action." The next four sections define

what shall constitute such an adverse possession. Under Section 10, when it shall appear that the occupant, or those under whom he claims, "entered into the possession of premises under claim of title, *exclusive of any other right*, founding such a claim upon a written instrument, as being a conveyance of the premises in question, or upon a decree or judgment of a competent Court, and that there has been a continued occupation and possession of the premises included in such instrument, decree or judgment, or of some part of such premises, under such claim for five years, the premises so included shall be deemed to have been held adversely, except that when the premises included consist of a tract divided into lots, the possession of one lot shall not be deemed a possession of any other lot of the same tract."

The precise object of this section is to define accurately under what conditions a possession shall be deemed *adverse*, within the true intent of Section 9, when the party enters under a claim of title founded under a written instrument, judgment or decree. The plaintiff claims to have come within this section. But, as we have seen, to bring himself within it he must have entered not only under a claim of title, but it must also have been "exclusive of any other right," Upon the most liberal interpretation of the findings, nothing on that subject can be deduced from them. The deed is not in the record, nor is there any description of it. What estate is purported to convey, whether it was to the plaintiff alone, or to him and others jointly, or whether it purported to convey the whole estate, nowhere appears in the findings. For this reason, the plaintiff has failed to bring himself within Section 10 of the statute.

He has failed, also, in another particular. By the very terms and letter of that section, it is provided that when the premises included in the conveyance "consist of a *tract divided into lots*, the possession of one lot shall not be deemed a possession of any other lot of the same *tract*." In the first place, it does not appear whether the deed to the plaintiff was for the whole block *in solido*, or whether it was, in terms, for the several lots which compose the block. If the former, then it was clearly for "a tract divided into lots," within the

true intent of the statute; and if the latter, it would be only a conveyance of the lots severally, and the possession of one would clearly establish no possession of the others. We can imagine no case which would come more fully within the letter and spirit of the exception, contained in Section 10 of the statute, than the case we are considering. The object of that section was to define the conditions under which an adverse possession will arise when the party enters under claim of title exclusive of any other right, founding his claim on a written conveyance, or upon a judgment or decree of a competent Court. If he enters under such a claim of title, and there has been a continued occupation or possession of the premises included in the conveyance, judgment or decree, "*or of some part of such premises*," under such claim, for five years, the premises so included shall be deemed to have been held adversely. But the statute then proceeds to make an exception to the rule: "Except that when the premises so included consist of a *tract* divided into lots, the possession of one lot shall not be deemed a possession of any other lot of the same tract."

If the conveyance of a block of land in a town or city, which is represented on the plan or map of the city as surrounded by public streets, and divided in the center by an alley, and laid out into lots, appropriately numbered, does not come within this exception, we can scarcely imagine a case which would.

On every ground presented by the record, we think the judgment was correct.

Judgment affirmed.

TEMPLE, J., also filed the following opinion:

I concur in the judgment, and also in the opinion, except in the application to the facts of this case of the exception in the tenth clause of the Act of Limitation, which provides that in certain cases the possession of one lot shall not be deemed possession of any other lot of the same tract.