[No. 5,818.]

## FONTAINE v. THE SOUTHERN PACIFIC RAILROAD COMPANY.

PLEADING—NON-PERFORMANCE.—Where the non-performance of a *duty* imposed by statute is relied upon as the *gravamen* of the action, the conditions in view of which the duty is to be performed, must be averred.

RAILROAD COMPANIES.—The proviso in § 30 of the Railroad Act of May 20th, 1861, simply provides that a railroad company shall not be compelled to perform the offer or agreement, (referred to in the preceding part of the section,) to fence on the sides of its road, where it runs through uninclosed lands, until the owner of the land has built fences abutting on the railroad.   It does not exempt the company from the liability created by § 40 for the value of animals killed by its locomotives on unfenced portions of the road.

ID.—LEASE—LANDLORD AND TENANT.—Where a railroad company has leased its road and rolling stock to another company, it remains liable, under the

sections of the law above referred to, for cattle killed by the trains of the lessee, on the unfenced portions of the lessor's railroad.

Appeal from a judgment for the plaintiff, in the Sixteenth District Court, County of Kern. Reed, J.

The facts are stated in the opinion.

*S. W. Sanderson*, and *Glassell & Smith*, for Appellant.

It was not the duty of the defendant to build fences along the line of its road, until the plaintiff, or his lessor, Beale, had constructed fences abutting on it. (Railroad Act of May 20th, 1861, §§ 30, 40.)

By § 30 of the act, the cost of fencing is in all cases included in the award of damages for right of way, unless the company in its petition offers to construct it; in which case, it is expressly provided that the company shall not be required to construct the fencing until the owners of the land shall have constructed fences abutting on the road. And by § 40 it is provided that where the cost of fencing is paid to the owners of land, or included in the damages, the railroad company shall be exonerated from all liability for the killing of animals until the fences are built. In the latter case, the railroad company is not liable at all for the killing of animals on uninclosed land; and, in the former, it is not liable until abutting fences are built.

The complaint fails to allege that such abutting fences had been constructed, and is therefore insufficient. When the non-performance of a duty imposed by statute is relied upon as the *gravamen* of the action, the *conditions* in view of which the duty is to be performed must be averred. (2 Wait's Practice, 307, § 4; *Van Schaick* v. *Wynne*, 16 Barb. 95; *City of Buffalo* v. *Holloway*, 7 N. Y. 493; *Ransford* v. *Copeland*, 6 Ad. & El. 482; *Smith* v. *Lockwood*, 13 Barb. 209; *People* v. *McCumber*, 27 Id. 632.)

The findings are insufficient to support the judgment: 1st. Because it is not found that the plaintiff or his lessor had constructed abutting fences. The finding that the defendant failed, etc., *as required by law*, is to find a conclusion of law, and is not a finding of fact. (*Indianapolis R. R. Co.* v. *Robinson*, 35

Ind. 380.)    2nd.   Because all the material issues are not found.
(*Kinsey* v. *Green*, 51 Cal. 379 ; *Speegle* v. *Leese*, Id. 415 ; *Ma-
jors* v. *Cowell*, Id. 478 ; *Bosquett* v. *Crane*, Id. 505; *Harris* v.
*Burns*, Id. 528 ; *People* v. *Forbes*, Id. 628.)    Whether the de-
fendant had leased its road to the Central Pacific Railroad
Company was a material issue.    It was material, because, if
true, the Central Pacific, and not the defendant, is liable for the
supposed negligence—the leasing being a lawful act within the
power of defendant.    (Railroad Act of 1861, § 13 ; Hitt. art.
833 ; Statutes cont'd in force, p. 156, § 13.)    There is no find-
ing upon this issue.    If either of said companies are liable, it is
the lessee and not the defendant.    (*Cheatham* v. *Hampson*,
4 Term. R. 318 ; *Taylor* v. *Whitehead*, 2 Doug. R. 745; *Rex* v.
*Watts*, 1 Salk. 357 ; *Russell* v. *Skeaton*, 3 Q. B. R. 449; *Mills*
v. *Holton*, 2 Hurl. & N. 14; *The Mayor etc.* v. *Corlies*, 2 Sand.
[S. C. R.] 301 ; *Sands* v. *Edgar*, 59 N. Y. 28 ; *Frazer* v. *Skey*,
2 Chit. R. [18 E. C. L. 441] ; *Line* v. *Stephenson*, 33 Id. 490 ;
35 Id. 77.)    The criterion of liability in these cases is : " Who
had the exclusive possession and control of the road ? "    (*Ill.
Cent. R. R. Co.* v. *Kanousse*, 39 Ill. 276 ; *Toledo P. & W. R. R.
Co.* v. *Rumbold*, 40 Id. 143 ; *Whitney* v. *A. & St. Lawrence R.
R. Co.* 44 Me. 362 ; *Wyman* v. *Penobscot & Kennebec R. R. Co.*
46 Id. 162 ; *Stewart* v. *C. & N. W. R. R. Co.* 27 Iowa, 282 ;
*Downing* v. *Chicago R. I. & P. R. R. Co.* 43 Id. 96 ; *Louis-
ville & Nashville R. R. Co.* v. *Norton*, 2 Am. R. 436 ; *Tracy*
v. *Troy etc. R. R. Co.* 55 Barb. 529 ; *Ditchett* v. *S. D. & P.
M. R. R. Co.* 67 N. Y. 426 ; Shearman & R. on Neg. § 466-7.)

Here the lease is made by the express license of the State,
(Railroad Act of 1861, § 13, cited *supra*) and the lessee becomes
the owner pending the lease.    (*Proctor* v. *Hannibal R. R. Co.*
64 Mo. 112 ; *Schoff* v. *Improvement Co.* 57 N. H. 110 ; *Choteau*
v. *Thompson*, 2 Ohio St. 114 ; *Tracy* v. *Troy & Bost. R. R. Co.*
38 N. Y. 439.)

*R. E. Arick*, for Respondent.

Admitting that the company had the right to lease its road,
it would still be responsible, and could not thereby be relieved.
(*Macon and Augusta R. R. Co.* v. *Mayes*, 15 Am. R. 680.)    A

franchise is a compact between the people and persons to whom the extraordinary grant is made ; and a railroad company cannot lease its road to others, and avoid the obligations imposed upon it.

The laws of this State provide that all railroad corporations must make and maintain a good and sufficient fence on either or both sides of their road, and in case they do not do so, if their engine or cars shall kill or maim any animals, etc., they must pay the owner a fair market price for the same.    (Civ. Code § 485.) This law is applicable to all railroads in this State.

Department No. 2, SHARPSTEIN, J. :

The plaintiff brought this action to recover the value of some cattle, which he alleges were run over by locomotives and cars on the track of the defendant's railroad, by reason of the failure of the defendent to make and maintain a good and sufficient fence on either side or both sides of its said railroad track and property, as required by law.

The complaint was demurred to, on the ground that it did not state facts sufficient to constitute a cause of action.    The demurrer was overruled, and it is urged on behalf of appellant that the Court erred in overruling it, because " it was not the duty of the defendant to build fences along the line of its road until the plaintiff or his lessor, Beale, had constructed fences abutting on its road.    (Statutes continued in force, p. 169, § 30, subd. 2.)    The complaint fails to allege that such abutting fences had been constructed, and is, therefore, insufficient. Where the non-performance of a duty imposed by statute is relied upon as the *gravamen* of the action, the *conditions*, in view of which the duty is to be performed, must be averred."

The rule, which is here invoked by the learned counsel, is a familiar one, and if the statute which creates the liability of railroad companies, in cases like this, makes the building of abutting fences by the owners of lands through which such roads run a condition precedent to a right to recover the value of cattle killed by locomotives and cars, the necessity of averring that such abutting fences existed at the time of the killing of such cattle, would be apparent—no less so than the neces-

sity of averring that the company had not made and maintained a sufficient fence on either or both sides of its property; but the statute, which creates the liability in cases like this, does not in terms make that liability depend upon the existence of abutting fences.   It reads as follows:

" It shall be the duty of the railroad company to make and maintain a good and sufficient fence on either or both sides of their property; and in case any company do not make and maintain such fence, if their engine or cars shall kill, maim, or destroy any cattle, or other domestic animals, when they stray upon their line of road where it passes through or alongside of the property of the owners thereof, they shall pay to the owner or owners of such cattle or other domestic animals, a fair market price for the same, *unless the owner or owners of the animals so killed, maimed, or destroyed shall be negligent or at fault.*" (Statutes continued in force, p. 174, § 40.)

It is alleged in the complaint that the cattle and horses which were killed strayed in and upon the track and ground occupied by defendant's railroad without the fault of the plaintiff.

It is urged, on behalf of the appellant, that this is not sufficient, and that it was necessary for the plaintiff to specifically allege that abutting fences had been built on the land, from which the cattle killed by defendant's cars strayed upon the railroad track.   In support of this position, § 30 of the act before referred to is cited.   That section relates to the mode of assessing damages for lands taken for railroad purposes, and among other things it provides, that " in assessing such damages, they (the Commissioners) shall include the cost of good and sufficient fences along the line of said railroad, and the cost of cattle-guards, where fences may cross the line of said railroad, unless said railroad company shall have offered or agreed, in their petition, to construct the same, in which case the cost of the same shall not be included in said damages; *provided*, if said land be uninclosed, said company shall not be required to construct said fences and cattle-guards until the owners of the land shall have constructed fences abutting on said railroad."

This clause is not necessarily inconsistent with the one which creates a liability for animals killed by a locomotive or cars

running upon unfenced portions of a railroad. The clause quoted from § 30 simply provides that a railroad company shall not be compelled to perform its offer or agreement to fence on the sides of its road where the same runs through uninclosed lands, until the owner thereof has built fences abutting upon said railroad. It does not exempt, or attempt to exempt, the company from the liability created by § 40 in any case. By this construction, effect is given to both clauses. If this were an action upon the defendant's offer or agreement to build a fence, its liability would have to be determined by a reference to § 30. But in an action to recover damages for the killing of cattle on its road, the question of its liability must be determined by reference to § 40.

The defendant answered, and, among other things, denied that " at any time mentioned in the complaint it failed to make or maintain a good or sufficient fence on either or both sides of the railroad track and property, described in said complaint, *as required by law*"; and the Court found " that during the time aforesaid, the said defendant failed to make and maintain a good and sufficient fence on either or both sides of its said railroad track and property, *as required by law*, and, through the negligence of the defendant in that respect, the locomotives and cars of said defendant ran against and over the said cattle and horses of the plaintiff, and killed and destroyed the same."

This is objected to on the ground that it is not the finding of a fact, but a conclusion of law. It was said in *Figg* v. *Mayo*, 39 Cal. 265, that "when the facts are so obscurely found, or are so blended with legal conclusions, as to render it doubtful whether the facts are only hypothetically stated, we must disregard it as a finding of fact." If the Court had omitted the words " as required by law " in the above finding, it would not be obnoxious to criticism even. But as the finding, with or without those words, means precisely the same thing, we think that it may properly be treated as a sufficient finding of fact.

It is alleged in the answer, that before the plaintiff's cattle were killed, the defendant " leased unto the Central Pacific Railroad Company all its (defendant's) railroad line then constructed and thereafter to be constructed from the town of Goshen, in the

County of Tulare, of said State, southerly through the Counties
of Tulare and Kern, of said State, together with all the cars,
locomotives, and appurtenances thereunto belonging, or in any
wise appertaining; and   *   *   *   said Central Pacific Rail-
road Company took possession and control, and has ever since
had possession and control, of all of said railroad line, property,
and appurtenances so leased and let to it, the said Central Pa-
cific Railroad Company, by the said Southern Pacific Railroad
Company, defendant herein."

"And   *   *   *   that ever since the railroad track, cars, lo-
comotives, and appurtenances hereinbefore mentioned and de-
scribed have been in the exclusive control, management, and
possession of said Central Pacific Railroad Company, and oper-
ated and run by it solely; and defendant   *   *   *   has never
at any time since   *   *   *   had any control, management, or
possession of the line of railroad mentioned in the complaint, or
of the locomotives, cars, or appurtenances thereunto belonging,
or has run or operated the same, or any part or portion thereof;
and that, if any damage has been caused by any matters alleged
in the complaint, it has been caused and done by the said Central
Pacific Railroad Company, and not by this defendant."

The only finding which seems to refer to this allegation is:
"That the lease from the Southern Pacific Railroad Company
to the Central Pacific Railroad Company, dated September 1st,
1876, and the resolution introduced in evidence by the defend-
ant, have never been recorded in the County of Kern, and there
is no evidence that the plaintiff had any knowledge of the exist-
ence thereof."

If that allegation raises a material issue, this finding is not
sufficient. In this action it is wholly immaterial whether the
lease referred to has ever been recorded or not. The only ques-
tion is, whether the lessor is liable for cattle killed by the trains
of the lessee, on unfenced portions of the lessor's railroad. If
it is, the allegation in respect of the lease is immaterial, and no
finding upon it was necessary. The liability is created by stat-
ute, and it only arises in the absence of sufficient fences. The
actionable negligence consists in the omission to build fences.
The statute provides that if any company does not make and

maintain a good and sufficient fence on either or both sides of its property, and its engine or cars kill any cattle which stray upon the line of its road, where it passes through or alongside of the property of the owner of said cattle, such company shall pay the owner of the cattle so killed a fair market price for them, unless such owner shall be negligent or at fault. In many, if not in all of the States of the Union, similar statutes have been enacted, and there are several reported cases in which the question involved in this case was considered.

In Shearman & Redfield on Negligence, (§ 466) it is said: " When a railroad company runs its trains over a track belonging to another company, and such track is not properly fenced, a nice question arises as to which company, if either, is liable under the statute for injuries committed by the trains of the former company. We think the negligence of the company owning the track is to be imputed to the company running the trains, and that the latter is absolutely liable under the statute for injuries to animals."

This would seem to imply that, in the opinion of the authors, the lessor would not be liable under the statute for such injuries. But we are unable to discover any stronger reason for holding the lessee than for holding the lessor liable in such a case. A strictly literal interpretation of the statute might exempt both the lessor and the lessee from liability, as the statute does not in terms provide for a case in which one company owns and another operates a railroad. The duty, however, of fencing devolves upon the company owning the road, and if it leases the road in an unfenced condition to be operated by another company, it does seem to us that it is liable within the spirit, if not within the letter of the law, to the same extent, in a case like this, as it would be if its instead of its lessee's engine and cars had run over the plaintiff's cattle. As was said by the Court in *Tracy* v. *The Troy and Boston Railroad Company* (38 N. Y. 437): " The passage of this act being induced by public considerations, and its purpose being to protect the traveling public and the owners of domestic animals along the line of their road, it should receive a liberal construction to effectuate the benign purpose of its framers. A rigid and literal reading would, in

many cases, defeat the very object of the statute, and would exemplify the maxim, that ' the letter killeth, while the spirit keepeth alive.' Every statute ought to be expounded, not according to the letter, but according to the meaning; *qui haeret in litera haeret in cortice.* (Dwar. on Stat. 695.) And the intention is to govern, although such construction may not, in all respects, agree with the letter of the statute. (Plowd. 205.) The reason and object of a statute are a clue to its meaning (Dwar. on Stat. 695); and the spirit of the law, and the intention of its makers are diligently to be sought after, and the letter must bend to these. (6 Bac. Abr. 384, 6th ed. Lond. 1807 ; Kent's Com. 465; Smith's Com. on Stat. §§ 709, 710.) The defendant in this case seeks to escape liability for the injury it has inflicted, through the letter of the law."

The language of this statute is as follows : " It shall be the duty of *the* railroad company to make and maintain a good and sufficient fence on either or both sides of *their* property, and in case any company do not make and maintain such fence, if *their* engine or cars shall kill, maim, or destroy any cattle," etc. This language imposes the duty to fence upon the company *which constructs and owns the road.* No such duty is imposed upon the lessee of the road. Therefore the learned counsel for the appellant insists that, " This language makes the *owner* of the road liable *only* when *its* engine, etc., kills, or maims, etc., and not when the killing or maiming is done by the cars of a lessee. In neither respect does this language embrace the case of a lessee. In a case like the present, then, where one corporation owns the road, and another the engine and cars, and is operating the road under a lease, this statute can have no application, and hence the case is to be tried and determined according to the principles of the common law only."

Such a construction would render the statute a dead letter in any case in which a railroad had been leased, and no case has been brought to our attention in which it was held that neither the lessor nor the lessee would be liable in such a case. Nor have we found a case in which it was distinctly held that the company owning the road could exempt itself from such liability by leasing its road to another company. In the *Illinois*

*Central Railroad Company* v. *Kanouse*, (39 Ill. 227) which was an action against the lessee of the road, the Court says: " In the case before us, admitting it was the duty of the first party to the agreement (the company owning the road) to fence this road, that they would be liable for this injury had they been sued there can be no question." And in *Toledo etc. Railroad Company* v. *Rumbold*, 40 Ill. 143, the same Court said, in an action against the lessors of the same road: " It was the duty of appellants to have fenced the road, and public safety demands that they should be held liable for all damages resulting from the neglect to fence it. And the same policy would require that the Illinois Central (the lessee) should be held responsible for presuming to use the road of another company fenceless and unprotected. *Either company would be liable for the injury.*" Redfield, in a note to the case of *Parker* v. *Rensselaer and Saratoga Railway*, (16 Barb. 315) in which it was held that the defendant, being the lessee of the road upon which the injury was committed, was not liable under the statute, says, the only question in regard to the soundness of the decision is, whether both companies were not chargeable with negligence, *the one for suffering the road to be used, and the other for using it in that condition.* (1 Redfield on the Law of Railways, 5th ed. 618.)

It follows, from the view which we have taken of this question, that the defendant's liability under the statute could not be affected by the lease which it set up in its answer, and therefore it was unnecessary for the Court to find ·upon the issue raised by the allegation that the road had been leased, and was operated by the lessee at the time when the injury to the plaintiff's cattle was committed.

This case was argued before the late Supreme Court, and submitted. That Court, as we are advised, requested further argument upon the question last discussed in this opinion. On the other points, we understand that our views are in accord with those of the late Court.

Judgment and order denying the motion for a new trial affirmed.

THORNTON, P. J., and MYRICK, J., concurred.