[Civ. No. 583.    Third Appellate District.—September 9, 1909.]

## E. E. JOHNSON, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

RAILROAD COMPANIES—OPERATION OF RAILROAD BY LESSEE—DUTY TO FENCE TRACK—INJURY TO STOCK—LIABILITY FOR NEGLIGENCE.—A railroad company which operates a railroad as lessee thereof has the same duty as would be imposed upon the lessor, if operating the same, to keep its tracks properly fenced and in suitable repair, as required by section 485 of the Civil Code, and for negligence in failing to do so the lessee is liable to the owner for injury to or loss of any domestic animals escaping upon the track without the fault of the owner thereof.

ID.—CONSTRUCTION OF STATUTE—GATES PART OF FENCE.—Gates constructed in connection with the fence for the convenience of the owner of the adjacent property are a part of the fence, and the railroad company is under the same duty to erect the gates in the first instance and keep them in repair as it is in regard to any other part of the fence; and they must be so securely adjusted that animals cannot, by pressing against them, cause them to open and escape upon the track.

ID.—PRIMA FACIE CASE OF NEGLIGENCE.—Where there was evidence that the gate on plaintiff's land was out of repair and was not good and sufficient for the purpose, and that defendant had notice of that fact, and that needed repairs requested were not made until after the loss and injury to animals escaping through the defective gate, without the fault of their owner, such facts, unexplained, made a *prima facie* case of negligence against the defendant.

ID.—PLAINTIFF NOT REQUIRED TO EXPLAIN OPENING OF GATE—BURDEN OF PROOF.—Plaintiff was not required to explain how the defective gate came to be open; but it being known by the defendant to be defective, and sufficient time having elapsed to make the necessary repairs, the burden was upon the defendant to show that plaintiff's mules, which may have pushed open the gate, did not escape through defendant's negligence; and if it failed to sustain such burden, it failed to excuse its negligence.

ID.—OPENING OF DEFECTIVE GATE BY ANIMALS—LIABILITY OF DEFENDANT UNAFFECTED.—The fact that the defective gate which could not be securely fastened was pushed open by plaintiff's animals could not affect the liability of the railroad company for the killing or maiming of the same, after having been charged with notice of the defective condition of the gate.

ID.—INSTRUCTIONS—REQUEST AS TO NONSUIT AND FENCE—MODIFICATION
—NEGLIGENCE AS TO GATE AND CONDITION.—It appearing that a non-
suit had been granted as to a second cause of action merely for
negligent operation of defendant's cars, and that the jury were
properly instructed as to the nature of the cause of action to be
considered, the court properly modified a requested instruction stat-
ing the fact of such nonsuit, and that the only question to be
considered by the jury was "whether defendant has or has not
maintained a good and sufficient fence along its right of way,"
by omitting all reference to such nonsuit, and giving in lieu of the
request: "You are not to consider any testimony as to carelessness
or negligence except as relates to the gate and its condition."

ID.—SUFFICIENCY OF COMPLAINT.—*Held*, that the complaint is sufficient
to charge the defendant with liability. It was not necessary to
allege that the defendant was the owner of the railroad.

ID.—MOTION FOR NONSUIT—REVIEW UPON APPEAL FROM ORDER DENY-
ING NEW TRIAL.—It is held that the motion for a nonsuit for
insufficiency of the evidence for the plaintiff was properly over-
ruled; but that the ruling thereupon is reviewable upon appeal
from an order denying a motion for a new trial.

APPEAL from an order of the Superior Court of Placer
County, denying a motion for a new trial.  J. E. Prewett,
Judge.

The facts are stated in the opinion of the court.

Tuttle & Tuttle, for Appellant.

F. A. Duryea, for Respondent.

CHIPMAN, P. J.—Action for damages for injury to cer-
tain mules by defendant's cars.  The cause was tried by a
jury and plaintiff had the verdict on which judgment was
entered for $796.  Defendant appeals from the order deny-
ing its motion for a new trial.  The pleadings are verified.

The complaint alleges the corporate capacity of defendant,
and "that during all the times herein mentioned the said
defendant corporation was in the possession, control, and
operation of that certain railroad located and extending from
the town of Roseville, county of Placer, state of California,
northerly through the western part of said county and be-
yond, to and through the state of Oregon. and known as
the 'California Central' railroad, and during all of said times

the said defendant was engaged in the operation of its engines and cars over and along the said railroad.'' These averments are not denied. It is further alleged that plaintiff was at all said times ''in the possession and occupancy as tenant of that certain farm [describing it], and through and over which said farm the said 'California Central' railroad extended during all the times herein mentioned; that during all of the times herein mentioned it was the duty of said defendant corporatio'n to maintain a good and sufficient fence on either or both sides of the said railroad where the same extended through and over the said farm as aforesaid.'' It is then alleged that plaintiff was, on February 11, 1905, the owner of certain four work mules of the value of $1,000, which were then ''upon pasture on the said farm,'' and that on said day ''said defendant, disregarding its duty in that behalf, failed, refused, and neglected to maintain a good and sufficient fence on that side of said railroad on said farm on which the said four mules were at pasture as aforesaid; and by reason of such failure, refusal and neglect of said defendant to maintain such good and sufficient fence, as aforesaid, and without fault or neglect upon the part of plai,ntiff, the plaintiff's said four mules, on or about said eleventh day of February, 1905, escaped from the said premises and strayed upon the track and ground of the said railroad, and the engine and cars of the said defendant, while being then and there operated and run over and along the said railroad by the agents, serva,nts and employees of said defendant, then and there ran over, against and upon said four mules, so that two of said mules were then and there killed and destroyed and the other two of said mules were then and there so maimed and crippled that they were from thence and now are almost wholly unfit for use.'' It is further alleged that plaintiff expended the sum of $21 for medicines and the services of a veterinary surgeon in the care and treatment of said last-named mules. There is a second count in the complaint alleging that the injuries complai,ned of resulted from the negligent and careless management of defendant's cars. A motion for a nonsuit was granted as to this count.

There was evidence that at the times mentioned in the complaint plaintiff was lessee and in the occupancy of land.

bordering ojn the right of way and track of the California
Central railroad near the town of Lincoln, Placer county,
and that the defendant was at all said times engaged in
operating its engines and cars over and along the said rail-
road; on the evening of February 10, 1905, plaintiff turned
out to pasture on said land certain mules, and that during
that night four of these mules strayed upon said railroad
track, were run down by defendant's engine and cars while
on said track and two were killed and two badly crippled;
that these mules escaped through a gate leading from plain-
tiff's pasture to and across said track to the public highway
on the opposite side of said track; that this gate was one
but not the only means by which plaintiff could reach the
highway and was so used by plaintiff; it was what is called a
slide gate, not on hinges, and constituted part of the fence
built by the railroad company in fencing its track and was
placed there for the convenience of the land owner; it was
fastened, at the end where it was opened, by slipping some
inches between two upright posts intended to receive it, and
to open it the gate was pushed back sidewise and swung
around the requisite distance to permit passage through it.
The plaintiff testified: "The top board of the gate was broken
and one of the rear posts in the back of it was broken off
in the top of the ground where the gate swung on, and the
top board of the gate itself was about fourteen or fifteen
inches, where nailed on, broken, and it would not shove in
between the boards more than a couple of inches. Where it
was closed it would not go in more than a couple of inches.
When the gate was open it would have a tendency to sag in
the middle toward the track. The two posts on which the
gate was adjusted were so close together on account of this
sagging that it could not be shoved between them." He
was asked if he had previously called the attention of the
company or any of its agents or employees to the condition
of the gate, and answered: "I asked the foreman about a
month before for a new gate in place of the one that was
there. I told him the gate was in a bad condition and I
wanted a new gate in place of it. I think I mentioned it to
him several times before the mules were killed. Two or three
days after the mules were killed I noticed there were two
ties lying this side of the gate. I supposed they were posts

for the rear end of the gate." The day before the accident plaintiff passed through the gate with a team and left it closed, i. e., he pushed the gate between the posts a couple of inches as far as it would go. He did not see the gate again until the next morning, when he found it closed, and was told by the foreman of the section that a couple of mules had been killed which proved to be plaintiff's. He observed by the tracks, as others did, that the mules escaped through this gate. Witness Kirkham testified for defendant that he was in the employ of the defendant at the time. He testified: "My position was section foreman. My duties were to keep up the tracks, repair fences and see that everything was kept in shape; . . . the duties of a section foreman are to repair the track, keep the fences in shape and repair the gates when in bad order." He also testified that the morning after the night when the mules were killed he found the gate "wide open" and closed it. He also testified that he repaired the broken board on top of the gate "about four days before the accident," and that "the gate would slide in between the posts five or six inches." Witness Raner, for defendant, testified: "I was employed by the Southern Pacific in February, 1905, as track-walker. My duties were to take care of all switch lines and watch for lost bolts, broken rails and fences when down. I had to see that gates were closed when not in use. I had occasion to go by the Hemphill ranch (the land in question) every day. I remember the killing of the mules. I walked by the scene of the accident the day before the mules were killed, about 11 o'clock in the forenoon. The gate was closed then." He testified further: "I know that repairs were made upon the gate shortly before the accident. These repairs consisted of fastening the top board and latching the gate on the post where the gate goes into it. I was present when it was done by the section foreman, Kirkham. . . . Mr. Kirkham put in new posts and straightened them so that the gate could go in between them." Kirkham, in his testimony, said nothing about putting in new posts. Plaintiff's witnesses testified that the gate was not repaired before the accident, and the jury must have found that Kirkham and Raner were mistaken in this part of their testimony. There was no direct testimony as to how the gate came to be open. The evidence

left no doubt that the mules escaped from the pasture through
this gate. There was evidence tending to show that the
gate might have been opened by the mules or other animals
rubbing or pushing against it. Plaintiff testified (referring
to the two posts between which the gate was held when
closed) : ''Those two posts were sloughed around out of their
natural and proper position so that they faced out. They
were not parallel with the gate. The gate was about fifteen
feet long. If any mules or stock rubbed against the gate it
would have a tendency to move it from the posts and the
springing of the gate would move it out between the two
posts.'' And this witness testified that an animal could
easily rub the gate out where it was fastened between the
posts on account of not admitting it far enough to hold it-
self. Plaintiff also testified: ''There were four boards to
the gate. With the top board off the gate was still sufficient
to turn stock when the gate was properly closed. My com-
plaint was that there were these two posts between which
the gates slided that were so tightly closed that it was dif-
ficult to slide the gate in and fasten the gate. . . . With the
gate in that condition so that the boards would slide between
the posts a couple of inches, it was sufficient to hold the gate
in place. It would have to be moved back before it would
swing one way or the other at least a couple of inches to
be free from the posts.''

Appellant contends that this admission by plaintiff should
defeat his claim; that if the gate was sufficient to turn stock
notwithstanding the top board was broken and if with the
gate closed, as plaintiff testified he closed it, the gate would
turn stock, defendant should not be held liable, it being con-
ceded that the mules escaped through the open gate. We
do not understand plaintiff's testimony to be that the gate
was sufficient to turn stock. What the jury inferred and
might properly have inferred from his testimony was, that so
long as the gate kept its position when closed, it would turn
stock. His complaint was that it could not be securely fas-
tened because of the condition of the posts; that it had so slight
a hold that the rubbing of animals against it would cause it
to open.

The statute law on the subject is found in section 485 of
the Civil Code and provides as follows: ''Railroad corpora-

tions must make and maintain a good and sufficient fence on either or both sides of their track and property. In case they do not make and maintain such fence, if their engines or cars shall kill or maim any cattle or other domestic animals upon their line of road which passes through or along the property of the owners thereof, they must pay to the owner of such cattle or other domestic animals a fair market price for the same, unless it occurred through the neglect or fault of the owner of the animal so killed or maimed.''

Defendant makes the following points:

1. There is no evidence that defendant was the owner of the road; citing *Fontaine* **v.** *Southern Pacific R. R. Co.*, 54 Cal. 645.

2. The gate was used for plaintiff's convenience alone, and was a private gate into his own lands, and no duty devolved on defendant to maintain the same.

3. The evidence does not show that defendant failed to maintain a good and sufficient fence.

Some alleged errors of law are also pointed out.

In *Fontaine* v. *Southern Pacific R. R. Co.*, 54 Cal. 645, the question was whether the company which built and owned the road was liable for injuries to stock committed by the lessee of said company, the Central Pacific Railroad Company. The court held that the owning company was liable, but it did not hold that the lessee was not also liable. Indeed, the cases cited in the opinion hold that both were liable. Mr. Thompson cites several cases holding that the liability extends to the lessee of a railroad. (2 Thompson on Negligence, sec. 2049.) We think the fact being admitted that defendant was in the possession, control and operation of the railroad—i. e., lessee of the road—and was operating trains and running engines over the track when the animals were killed, the defendant is brought within the statute. It requires no wider interpretation to so hold than that the right of action accrues not only to the owner of the land but also to his lessee, as was held in *Walther* v. *Sierra Ry. Co.*, 141 Cal. 288, [74 Pac. 840].

The gate was part of the fence, and the statute applies to all parts of the fence. The railroad company is under the same duty to erect gates in the first instance, and keep them in repair when once erected, as it is in regard to any other

part of the fence. (2 Thompson on Negligence, sec. 2058, and numerous cases there cited.)

It was proven that the gate was out of repair and was not "good and sufficient" for the purpose, and that defendant had notice of the fact; and there was evidence that the needed repairs were not made until after the accident. As it was the duty of defendant not only to "make," but to "maintain, a good and sufficient fence," and as the injured mules escaped through the defective part of the fence, without fault of the plaintiff, these facts unexplained make a *prima facie* case of negligence against the defendant. (*McCoy* v. *Boyd*, 40 Cal. 532, [6 Am. Rep. 623].) In the case cited it was held that the railroad company operated its road at its peril when left unfenced, and that the adjoining land owner could recover for livestock injured by defendant's cars although he turned the stock out knowing that the track was not fenced. Had the defendant erected and maintained a good and sufficient gate, it would have been required only to exercise reasonable diligence in keeping the gate closed. Mr. Thompson says: "As these gates and bars are part of the statutory fence, the duty of the railroad company to keep its fence in repair requires it to use due diligence to keep them closed. Reasonable care, however, is all that is required. It is not bound to keep a special patrol sufficient to discover immediately when gates are open. It cannot be charged with negligence until it has had reasonable time to make the discovery, or has failed to take proper action after notification." (2 Thompson on Negligence, sec. 2059, and cases there cited.)

Plaintiff was not called upon to explain how the gate came to be open. Being known by defendant to be defective and sufficient time given it to make the necessary repairs, the burden was upon defendant to show that the mules escaped through no fault of it. There was evidence that in its then defective condition the gate might have been opened by the mules themselves. But this would not excuse defendant from liability. It is strongly urged that the gate could not have been opened by the mules wide enough to account for the tracks to appear the full width, and that the only reasonable explanation is that some person must have opened the gate wide and left it open. Only one witness, Raner, for defend-

ant, stated that the tracks showed the full width of the gate and his testimony on the point was inherently improbable. He testified that he noticed the tracks as he rode along the track on a hand-car, fifty feet distant, the next morning after the mules escaped. The other witnesses testified to seeing the tracks but did not locate them with reference to the space in the opening. At most, it may be said that there is no satisfactory explanation as to how the gate came to be open, and as it was shown not to have been "good and sufficient," defendant has failed to excuse its negligence.

Defendant requested an instruction informing the jury that a nonsuit had been granted as to the second cause of action alleging carelessness in operating the cars, and directing the jury that the sole point they were to consider was "whether defendant has or has not maintained a good and sufficient fence along its right of way." The court gave in lieu thereof the following instruction: "You are not to consider any testimony as to carelessness or negligence except as relates to the gate and its condition." It is contended that the defendant was deprived of a substantial right to its prejudice, because the jury were not specifically told that a nonsuit had been granted as to the second cause of action. So far as appears, the motion was made and the ruling of the court announced in the presence and hearing of the jury. The court elsewhere told the jury, at the request of the defendant, that "the complaint of plaintiff contains but one cause of action," and explained that the action was brought to recover damages "caused by the failure of defendant to maintain a good and sufficient fence along its right of way across the Quinn Ranch." We cannot see that the jury was left in any doubt of the real issue, or that the instruction complained of "only served to befuddle the jury."

A question was asked of plaintiff's witness whether the track foreman made any statement about the gate. The witness answered that he made no statement. Obviously, defendant was not injured by the answer.

The points that a nonsuit should have been granted to both causes of action and that the general demurrer to the complaint should have been sustained rest mainly upon considerations already disposed of. It was not necessary to allege that defendant is the owner of the railroad. The aver-

ments of the complaint were sufficient to charge the defendant with liability.

Respondent makes the point that the order denying the motion for a nonsuit cannot be reviewed where there is no appeal from the judgment; citing *Merced Bank* v. *Price*, 7 Cal. App. Dec. 459. The syllabus of the case so states. The opinion stated that the order denying the motion for a nonsuit "was made upon the sole ground of the insufficiency of the complaint. But the sufficiency of the complaint cannot be inquired into. (Cases *supra.*) For like reasons we cannot consider the demurrer, as that goes to the sufficiency of the complaint." The syllabus is not borne out by the text. which latter, it must be confessed, is not quite clear as to what was intended to be held.* In *Green* v. *Duvergey*, 146 Cal. 379, [80 Pac. 234], the court said: "The action of the court in improperly granting or refusing a nonsuit is also an error of law, whether made upon the opening statement of counsel or after the close of the evidence in the case," and may be reviewed on an appeal from an order denying a motion for a new trial.

The order appealed from is affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 4, 1909.

––––––––––––

*For the official report of this case, see 9 Cal. App. 177.