[No. 11958.    In Bank. — May 3, 1890.]

## DANIEL B. SPANGLER, Respondent, v. CITY AND COUNTY OF SAN FRANCISCO, Appellant.

Watercourse. — To constitute a watercourse, it is not necessary that the water shall run in the bed or channel of the stream all the year.

Municipal Corporations — Liability for Defective Sewer — Flooding Private Premises — Watercourse — Surface Water. — A city is liable for damages caused from the flooding of private premises by reason of a defective sewer, or of the neglect of its officers to keep the sewer in repair after knowledge of its defective condition; and it is immaterial whether the water doing the damage comes from a natural watercourse turned into the sewer by the city authorities or from surface water flowing into the sewer. It is the duty of the city, when it does provide water-ways, to provide such as are sufficient to carry off the water that might be reasonably expected to accumulate.

Id. — Negligence of City Authorities — Failure to Repair Sewer — Extraordinary Flooding — Contributory Negligence — House below Grade. — It does not relieve the city from liability for injury to private property caused by negligence of the city authorities in failing to keep the sewers in repair, after ample knowledge of their defective condition, because the precipitation of water which caused the injury was extraordinary and unusual, if the sewer was originally constructed of sufficient capacity to carry off all of the water which did fall, and it appears that in such construction the city authorities anticipated and provided against unusual floodings. The sewer being sufficient in capacity to carry all the water, the plaintiff had a right to assume that the city authorities would keep it in good repair, and was not bound to repair it himself, and was guilty of no negligence which would bar a recovery by building his house on a lot below grade and remaining therein.

ID. — FLOODING BY DAM — CONSTRUCTION OF SEWER — NEGLIGENCE OF BUILDERS — LIABILITY OF CITY. — If the injury to plaintiff's property was caused by a dam which diverted the water so as to flood his premises, and which was built by certain parties who had been constructing a sewer, it is no excuse to the city that the dam thus built caused the damage. Sewers are built under the direction of the city authorities; and if the parties building it under contract are so negligently conducting their work as to cause loss and injury to a third person, and the superintendent of streets has knowledge of the facts constituting the negligence, and neglects to remove the obstruction which caused the injury, the city is liable.

ID. — ACTION AGAINST SAN FRANCISCO FOR NEGLIGENCE — PRESENTATION OF CLAIM FOR DAMAGES. — It is not requisite to present a claim for damages, caused by negligence of the city authorities in the repairing or construction of a sewer, to the board of supervisors of the city and county of San Francisco before instituting a suit upon it.

APPEAL — TRANSCRIPT — STIPULATION AS TO EVIDENCE IN ANOTHER CAUSE. — Counsel should not attempt to impose their work upon the supreme court, by stipulating that all pertinent evidence contained in the transcript in another cause shall be considered as if embodied in the new-trial statement in the case in which the stipulation is made. The transcript in each case should contain in it all the matter which is to be determined.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*George Flournoy, Jr.*, for Appellant.

*William H. Bodfish*, and *W. C. & I. Burnett*, for Respondent.

THORNTON, J. — This is an action to recover of the city and county of San Francisco damages for neglect in keeping a sewer in repair, whereby the plaintiff was injured.

At the time that the injury occurred, and for some years before, the plaintiff was the owner of a lot of land situate at the southwesterly corner of Eighteenth and Fair Oaks streets, 27 feet on Eighteenth Street and 101 feet on Fair Oaks Street, the lot lying east of Fair Oaks,

and constituting a parallelogram of 27 by 101 feet, on which he had, in 1877, built a house.

The material facts are found by the court as follows: "That prior to October 19, 1883, defendant had authorized and caused a public street in said city and county of San Francisco, called Eighteenth Street, along and near the line of which a natural stream of water had been accustomed to flow and run, and many other streets crossing Eighteenth Street, to be graded, greatly above the natural level of the ground there, from Folsom Street westerly as far as Douglass Street, and thereby the waters of said natural stream were prevented from flowing in the bed of said stream, and said bed filled with earth in many places, and the waters flowing from a large water-shed to the westerly of Church Street intercepted and prevented from reaching said bed as they had been accustomed to do, and had authorized and caused a sewer to be constructed and laid down along Eighteenth Street from Folsom to Douglass streets, and other sewers along the streets crossing Eighteenth Street, and that by means thereof the waters that formerly flowed in said natural stream and from said water-shed were, until the time of the acts of negligence hereinafter referred to, received into and conducted in said sewer in Eighteenth Street, and conveyed therein to a point at Folsom Street, and from thence said waters found their way into Mission Bay and the bay of San Francisco, and that said waters would have continued to be so conveyed and to find their way until after the injuries herein mentioned, but for the acts of the defendant, and of her servants and agents, as hereinafter mentioned; that plaintiff, after October 19, 1883, and before the time of the injuries hereinafter mentioned, erected upon said lot of land a dwelling-house and carpenter-shop, and had improved said lot by grading it, and at the time of such injuries had on said premises and was the owner of the lumber, tools, paints, oils, finishing lumber, moldings, doors,

windows, material, rails, and property hereinafter mentioned, which tools constituted a chest of carpenters' tools, and said material included casings, among other things, and at the time of said injuries plaintiff was conducting business at his trade as a carpenter in said shop, and was residing on said premises with his family; that the foundation and shop floor mentioned in the fourth paragraph of the first count of the complaint constituted part of the dwelling-house and shop aforesaid; that there were no outhouses on said land; that within two years before the commencement of this cause, and up to the time of the injuries hereinafter mentioned, said sewer in Eighteenth Street to the westerly of Guerrero Street, through the negligence of the defendant and carelessness of the defendant in omitting to clear or repair the same, became, and until and including the times when such injuries occurred continued to be, obstructed, insecure, broken, and, with said sewers in said streets crossing Eighteenth Street to the westerly of Guerrero Street, incapable of conveying away the waters, drainage, and sewage received into the same, and thereby large volumes of water and sewage collected in said sewers westerly from Guerrero Street were conducted to and discharged with great and increased violence upon the said land and premises of the plaintiff between March 1, 1884, and at divers times between said dates, that is to say, on the seventh, eighth, and ninth days of March, 1884, and on the eleventh and twelfth days of April, 1884, whereby said water and sewage greatly devastated and injured the said land, dwelling-house, and shop during the period last aforesaid, and injured said building and shop, and caused said building to settle and become out of plumb, and saturated the soil of said lot and partially filled the basement of said house and shop with water, and broke said house and the other property hereinafter mentioned, wetted and injured and damaged, by means whereof the said dwelling-house and carpenter-shop, and the foundations

thereof, and said land, were damaged in the sum of five hundred dollars, and other property then on said premises damaged, that is to say, five thousand feet of lumber, to the amount of one hundred and twenty dollars, paints and oils to the amount of fifty dollars, finishing lumber, cases, and moldings to the amount of one hundred dollars, doors, windows, and blinds to the amount of seventy dollars, one ton of nails to the amount of one hundred dollars, carpenters' tools in carpenter-shop to the amount of one hundred and fifty dollars; that said injuries were in part caused by the washing of sewage and earth into and upon said lot and into said house and shop by and with said water; that the amounts above mentioned include the values of all the injuries to the plaintiff's said property by means of the facts herein stated; that defendant, at all times and during the whole period herein referred to, had notice of the then condition of said Eighteenth Street and the sewer therein, and of the streets crossing said street, and of the sewers therein, as hereinbefore shown, and that such notice was also given to and possessed by, and the knowledge of such condition had, by the defendant's board of supervisors and mayor, and her superintendent of public streets, highways, and squares, at all said times and during said period; that there was no necessity for causing said discharge of waters, or of said sewage, or of said earth, upon the land of plaintiff, but by a proper repair and claiming [cleaning] of said sewers the whole thereof could easily have been conducted past the land of the plaintiff and discharged into Mission Bay and the bay of San Francisco without doing any damage to plaintiff's said property; that the damage, loss, and injury hereinbefore mentioned was not, nor any part thereof, caused by the negligence of the plaintiff, and that plaintiff was not negligent in any particular in the premises."

It is urged that there was no proof that there was such a watercourse as is alleged and found.

The evidence is ample to bring it within the definition as given by all the cases. It is not necessary that the water shall run in the bed or channel of the stream all the year. There is evidence of bad breaks and water flowing in the bed.

But whether the water that did the damage came from a watercourse or from the surface, the liability would be the same. The liability here rests in the duty of the city to keep the sewers in repair, which duty, after ample knowledge of it, was grossly neglected.

It was the duty of the city, when it does provide water-ways, to provide such as are sufficient to carry off the water that might reasonably be expected to accumulate. The rule is so laid down in *Damour* v. *Lyons City*, 44 Iowa, 282; approved and followed in *Powers* v. *City of Council Bluffs*, 50 Iowa, 201, 202. (See *Mayor of New York* v. *Bailey*, 2 Denio, 433.) We think the rule above stated correct, and approve it.

But it is said that the precipitation which caused the injury herein was extraordinary and unusual, could not reasonably have been expected, and therefore the defendant is not liable. This might be true if the sewers had not been of sufficient size to carry off all the water which was so extraordinarily and unusually precipitated, but the evidence is clear and direct that the sewers, if they had been kept in order, were of a capacity to carry off all the water which did fall. This shows that the agents and servants by which the city acted in constructing the sewer anticipated that large sewers would be required to carry off the rainfalls which might be looked for; and it could not be allowed the defendant to invoke this defense, when it had in advance made provision for the very event that did occur. It could not harmonize with reason and justice to allow such defense for negligence. The contention would amount to this: Though the sewers were made large enough to carry off all the water, though the extraordinary rainfalls were anticipated, yet

inasmuch as the fall of water was unusual and extraordinary, the defendant is not liable. Sufficient provision having been made in advance for anticipated events, it would be inconsistent with all just and sound reason and the settled principles of law to hold one excused when the provision has become insufficient by reason of indifference to monitions and inexcusable neglect. The plaintiff had a right to assume that the agents of the city would attend to duty, and repair the broken and dilapidated sewer. He had a right to act on this assumption. Certainly there was no duty on him to remove the obstructions from the sewer and repair it himself, or be chargeable with negligence if he did not do so. It would have cost a considerable sum of money to have put the sewer in a proper condition, maybe more than his property was worth.

The evidence shows that the foundation of the house was below the grade of Eighteenth Street. The floor of the basement was four feet six inches below the level of the sidewalk on Eighteenth Street, on which the house fronted. The plaintiff moved into the house in January, 1884, though it was not completed until the month of March following. The lot was graded in October, 1883, about three feet higher than the former level. The front of the house was set back about five feet from the edge of the sidewalk (on Eighteenth Street), and was reached by steps going up from the sidewalk to the front door.

Though the lot was below grade, still the sewer, when in proper condition and unbroken, would have carried off the water which did the injury. Plaintiff was guilty of no negligence in building where he did, and his right to recover would not be impaired.

When the plaintiff built his house, in 1883 and 1884, he had, as said above, a right to act on the assumption that the city authorities would keep the sewer in good repair. The sewer being sufficient in capacity to carry all the water, the plaintiff might well consider that he

could remain securely on the land where he had built his house, and would not be guilty of negligence which would bar a recovery. (On this subject, see *Rochester White Lead Co.* v. *Rochester*, 3 N. Y. 463; 53 Am. Dec. 316; *Barton* v. *Syracuse*, 37 Barb. 292; 36 N. Y. 54; *Ashley* v. *Port Huron*, 13 Mich. 299, and cases there cited.)

Dillon states that "there is a municipal liability where the property of private persons is flooded, either directly or by water being set back, when this is the result of the negligent execution of the plan adopted for the construction of gutters, drains, culverts, or sewers, or of the negligent failure to keep the same in repair and free from obstruction, and this, whether the lots are below the grade of the streets or not. The cases support this proposition with great unanimity."

Counsel for defendant urges that if the damages to plaintiff had resulted from the natural flow from the adjoining high ground, he cannot recover. He further says, "It does not appear that this was not so."

The evidence on the point urged was before the court below, and it held that the damage was caused by the water which flowed from the broken sewer, and not from the adjoining higher ground. There is evidence to sustain the finding, and we do not feel at liberty to disturb it.

It is urged that the injury was caused by certain parties who had been constructing a sewer, who built a dam which diverted the water and caused it to flood plaintiff's land. Sewers are built under the direction of the city authorities; and if the parties building it are so negligently conducting their work as to cause loss and injury to a third person, the city is liable. It is no excuse to the city that a dam thus built caused the damage.

If there was such a dam, there is evidence which shows that the superintendent of streets had knowledge of it. There was a contractor building a sewer on Eighteenth Street, in February, 1884, and if he constructed any dam there, the city authorities had an

opportunity of seeing and knowing it; for the uncontradicted evidence shows that the superintendent or his deputy was there, when the sewer was being constructed, every morning. The only person building a sewer was a contractor, McDonald, who was a witness in the case, and if any such dam was built, he or his employees built it; and he testifies that the superintendent of streets or his deputy was there every morning to inspect the work. The superintendent thus knowing of the dam must have known it would have diverted the water in the rainy season. Knowing it, he should have caused it to be removed. His failure to remove it was negligence of duty; and the city, under the circumstances, should not be relieved in consequence of this dam of its responsibility in this case. Further, the dam being on the east side of Eighteenth Street, it does not appear with sufficient clearness that it caused the damage, to authorize this court to regard its existence as impairing plaintiff's right to recover herein.

It was not requisite to present the claim sued on herein to the board of supervisors of the city and county before instituting suit upon it. (*Bloom* v. *San Francisco*, 64 Cal. 503; *Lehn* v. *San Francisco*, 66 Cal. 76.)

A stipulation appears in the record in this case to the effect that all the evidence and findings appearing in the statement of the case in the action of *Cook* v. *City and County of San Francisco*, now here on appeal, that may be pertinent herein, shall be considered in this cause upon the appeal from the order denying defendant's new trial, as though the same were embodied in the statement on motion for a new trial in this case.

Under this mode of bringing a case here on appeal, the work of counsel is imposed on this court. This court is called on to read two transcripts in different cases, to decide and determine what evidence is pertinent in one case but not in the other, and what is not. This labor should be performed by counsel, and not by

the court. Counsel should not turn over their work to be performed by the court. The transcript in every case should contain in it all the matter on which it is to be determined, and the court ought not to be called on to read two transcripts to determine one case, and find out and cull from one transcript what would be pertinent in the case under consideration. Certainly counsel should recollect the amount of labor imposed on this court, and do everything incumbent upon them to lighten it. This court might well have refused to consider this cause, and have affirmed the judgment and order without consideration, by reason of the facts just set forth. In its consideration more time has been consumed on account of the unusual mode of presenting the case in the record. Though this case has been determined, another may not be treated in the same way.

The evidence is sufficient to justify the findings.

We find no error in the record.

Judgment and order affirmed.

Fox, J., Sharpstein, J., and Beatty, C. J., concurred.

McFarland, J., concurred in the judgment.