[No. 19205.    In Bank.—August 30, 1894.]

## B. D. EACHUS ET AL., RESPONDENTS, v. LOS ANGELES CONSOLIDATED ELECTRIC RAILWAY COMPANY, APPELLANT.

STREET IMPROVEMENTS—CHANGE OF GRADE—OFFICIAL GRADE—RIGHT OF ABUTTING OWNER TO COMPENSATION.—An owner of land abutting upon a street is entitled to compensation for any injury to his property which it sustains over and above that sustained in common with other abutting owners or the public in general, resulting from a change in grade of the street; and the fact that the change in the grade is merely from the change of the natural grade to the official grade is immaterial.

ID.—CONSTITUTIONAL LAW—EMINENT DOMAIN—PERSONAL DISCOMFORT—DIMINUTION IN VALUE OF PROPERTY.—Under section 14 of article I of the constitution, forbidding the taking or damaging of private property for public use without compensation, a mere infringement of the owner's personal pleasure or enjoyment, or merely rendering the property less desirable for certain purposes, or even causing personal annoyance or discomfort, does not constitute a damage for which compensation is to be made, but the property itself must suffer some diminution in substance, or be rendered intrinsically less valuable by reason of the public use.

ID.—IMPAIRING USE OF STREET—COMPENSATION TO OWNER.—The right of the owner of a city lot to the use of the street adjacent thereto is property which cannot be taken from him for public use without compensation; and any act by which this right is impaired is to that extent a damage to his property within the meaning of section 14 of article I of the constitution, for which he is entitled to compensation.

ID.—TITLE TO STREET IMMATERIAL.—For the purpose of determining the damage resulting to the owner of a lot abutting upon a public street, by reason of the destruction or impairment of the easement of the abutting owner, in the street fronting upon his lot, it is immaterial whether he has the fee in the street or only an easement for its use. In either case it is property, for an injury to which he is entitled to relief.

ID.—DETERMINATION OF BENEFIT OR INJURY TO LOT.—In determining the question as to whether the grading of a street in front of a lot will increase or diminish the value of the lot, the relative condition of the street and lot before and after the grading should be considered, as well as all the uses for which it is adapted and to which it may be applied. Its diminution in value for some particular use does not necessarily show a damage to the property, but it is only when its market value is diminished by the public use that it can be said to have sustained such damage as will entitle its owner to receive compensation.

ID.—CAUSE OF DAMAGE—CHANGE OF GRADE—ADOPTION OF ORDINANCE—EVIDENCE.—Where a street is changed from its natural to its official grade, damage sustained by an abutting owner is caused by the actual grading of the street, and not by the ordinance fixing the grade, and evidence, in an action by him for damages, as to the damage caused by the adoption of ordinance is properly rejected by the court.

ID.—SUBSEQUENT USE OF STREET FOR RAILROAD.—The use to which a street might be put after a change of grade does not affect the damage caused to an abutting lot by the change of grade; and the fact that it might receive a benefit from the construction or operation of a railroad thereon is immaterial upon the question of damages.

ID.—DAMAGES, WHEN COMPLETE—SUBSEQUENT USE OF LOT.—The damages to a lot abutting upon a street, by reason of the change of grade, are complete when the grade is changed, and do not depend upon the subsequent use of the lot.

ID.—EVIDENCE—DEPRECIATION IN VALUE OF LOT.—Upon the issue as to the extent to which the property was damaged by the grading, evidence of witnesses that the effect of the grading was to depreciate the value of the property, and as to the amount it depreciated it, is competent, in the absence of a special objection.

ID.—GENERAL OBJECTION—WAIVER OF SPECIAL OBJECTION.—Unless evidence is inadmissible for any purpose a party is not at liberty, under a general objection thereto, to afterwards urge a special objection which goes merely to the form of the question by which the evidence is sought.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*John D. Pope*, for Appellant.

*Galbreth & Morrison*, for Respondents.

HARRISON, J.—The plaintiffs are the owners of a lot of land in the city of Los Angeles, situate at the corner of First and Figueroa streets, having a frontage of one hundred and forty-two feet on First street and fifty feet on Figueroa street. The lot is a portion of a larger tract of land which originally belonged to the municipality, and was laid out by it into blocks and streets in 1872. The plaintiffs became the owners of the lot in 1887, and built a house thereon, in which they lived for several years. In 1891 the defendant received a franchise from the city of Los Angeles to construct a railroad along First street in said city in front of the plaintiffs' property, and in preparing the street for the construction of its railroad made an excavation in the middle of the street to its official grade. The street is eighty-two and a half feet in width, and

for the purpose of laying its tracks upon the official grade of the street the excavation made by the defendant in front of the plaintiffs' property was twenty-eight feet in depth at the corner, gradually diminishing to a depth of twenty feet at its rear, and extended to within ten feet of the boundary line of their lot fronting on the street. The ordinance conferring the franchise upon the defendant is not set forth in the record, and it does not appear whether there was any requirement that the track should be laid upon the official grade of the street; and, although it was admitted that until the excavation made by the defendant the street had never been changed from its natural grade, it does not appear from the record when the official grade was established. The plaintiffs brought this action to recover the damages caused to their lot by reason of the acts of the defendant in cutting off their access thereto. The cause was tried by a jury, and a verdict rendered in their favor for eight hundred and twenty-three dollars. The defendant has appealed.

The constitution of 1879, article I, section 14, provides that: "Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into, court for the owner." Prior to the adoption of this constitution it was held that an abutting owner was not entitled to compensation for any injury to his property resulting from a lawful change in the grade of the street fronting thereon; but in *Reardon* v. *San Francisco*, 66 Cal. 492, it was held that this provision of the constitution gave to him a remedy that he did not previously have, and authorized a recovery for such indirect or consequential damage to his property as he might sustain over and above that sustained by him in common with other abutters or the public in general. This provision does not exist in the constitution of many of the states, and it is only within a few years that it has been incorporated into the constitution of any state. Hence, the opinions of courts in other states which

were rendered at a time when no such rule of law existed are inapplicable, and apt to be misleading in their reasoning. The constitution does not, however, authorize a remedy for every diminution in the value of property that is caused by a public improvement. The damage for which compensation is to be made is a damage to the property itself, and does not include a mere infringement of the owner's personal pleasure or enjoyment. Merely rendering private property less desirable for certain purposes, or even causing personal annoyance or discomfort in its use, will not constitute the damage contemplated by the constitution; but the property itself must suffer some diminution in substance, or be rendered intrinsically less valuable by reason of the public use. The erection of a county jail or a county hospital may impair the comfort or pleasure of the residents in that vicinity, and to that extent render the property less desirable, and even less salable, but this is not an injury to the property itself so much as an influence affecting its use for certain purposes; but whenever the enjoyment by the plaintiff of some right in reference to his property is interfered with, and thereby the property itself is made intrinsically less valuable, he has suffered a damage for which he is entitled to compensation.

The right of the owner of a city lot to the use of the street adjacent thereto is property which cannot be taken from him for public use without compensation; and any act by which this right is impaired is to that extent a damage to his property. When a city subdivides a tract of land of which it is the owner into blocks and streets, and sells the same, it thereby dedicates the streets to public use, and the purchaser of one of those lots acquires an easement in the street fronting upon his lot, for the purposes of ingress and egress, which attaches to the lot, and in which he has a right of property as fully as in the lot itself; and any subsequent act of the municipality by which that easement is destroyed or substantially impaired, for the benefit of

the public, is a damage to the loti tself, within the meaning of the constitutional provision, for which he is entitled to compensation. Such easement is a right of property incident to the lot itself, and any damage sustained by the owner in its destruction or impairment is a damage peculiar to himself and independent of any damage sustained by the public generally. For the purpose of determining this damage, it is immaterial whether he has the fee in the street or only an easement for its use. In either case it is property, for an injury to which he is entitled to relief. (*City of Denver* v. *Bayer*, 7 Col. 113; *Rude* v. *City of St. Louis*, 93 Mo. 413; *Hobson* v. *Philadelphia*, 150 Pa. St. 595; *Schaufele* v. *Doyle*, 86 Cal. 107.) *Rigney* v. *City of Chicago*, 102 Ill. 64, is a leading case on this subject. In that case the fee of the streets was in the city, and the city had constructed a bridge or viaduct on a public street intersecting the street on which the plaintiff's lot fronted, and about two hundred and twenty feet distant from his lot, thus interfering with his access to that street, except by means of a flight of stairs; and his premises were thereby damaged and depreciated in value. The court held that the injury sustained by him in the prevention and impairment of free access to his lot was a damage for which the constitution gave him a right of recovery, and that in order to recover for the damage which private property had sustained for public use, "it is sufficient if there is a direct physical obstruction or injury to the right of user or enjoyment, by which the owner sustains some special pecuniary damage in excess of that sustained by the public generally, which by the common law would, in the absence of any constitutional or statutory provisions, give a right of action." The supreme court of the United States gave the same construction to that provision in the constitution of Illinois, in *Chicago* v. *Taylor*, 125 U. S. 161. Similar principles have been enunciated in other states whose constitution contains this provision. (*City of Denver* v. *Bayer*, 7 Col. 113;

*Sheehy* v. *Kansas City Cable Co.*, 94 Mo. 574; 4 Am. St. Rep. 396; *Hatch* v. *Tacoma etc. R. R. Co.*, 6 Wash. 1; *City of Atlanta* v. *Green*, 67 Ga. 386; *Lowe* v. *City of Omaha*, 33 Neb. 587; *Johnson* v. *Parkersburg*, 16 W. Va. 402; 37 Am. Rep. 779; *Hot Springs R. R. Co.* v. *Williamson*, 45 Ark. 429; *Gulf etc. R. R. Co.* v. *Eddins*, 60 Tex. 656; *Gulf etc. Ry. Co.* v. *Fuller*, 63 Tex. 467.)

Whether the grading of the street in front of a lot will increase or diminish the value of the lot will depend upon the relative condition of the street and lot before and after the grading, and must be determined from the circumstances of each case. The elements which enter into this consideration are varied, and no rule can be prescribed which will be applicable to all cases. It is not every change of grade that will constitute a damage to the adjacent property. An excavation of one or two feet might not appreciably impair the value of the lot, while one of twenty feet would naturally have that effect; and the increased facility for communication with other parts of the city, or the opening up of the land to access by the public, may fully equal, if not exceed, the cost of grading the lot to correspond with the changed grade of the street. The mere fact that the property is worth as much after the grading as before is not an absolute test, since this may be the result of a general advance in values throughout the entire vicinity, irrespective of the grading, or dependent upon some municipal improvement, of which the grading in front of the lot is only a part. (*Pittsburgh etc. Ry. Co.* v. *McCloskey*, 110 Pa. St. 442.) Nor is its diminution in value for some particular use necessarily a damage to the property. The grading of a street may impair the desirability or salability of a lot for use as a residence, while at the same time it may render it so desirable as a site for a warehouse or a manufactory as to increase its market value. The market value of a lot is not determined by its value for any particular use, but results from a consideration of all the uses for which it is adapted, and to which it may be

applied (*San Diego Land etc. Co.* v. *Neale,* 88 Cal. 50);
and it is only when the market value of property is
diminished by the public use that the property can·be
said to have sustained such damage as will entitle its
owner to receive compensation.

The same rule is applicable when a street is for the
first time reduced to an established grade, as when a
change in the grade has been made after the street has
once been brought to such grade.    The suggestion that
when the owner dedicates his land for a street it is with
the understanding and consent on his part, binding also
upon his grantees, that it will be subsequently fitted for
use by grading, applies with as much force to any sub-
sequent change in the established grade as to the first
establishment of a grade.    The power of the city to
determine the grade is not exhausted with its first exer-
cise, and the dedication by the owner must be deemed
to have been made with a knowledge of this principle
as much as with a consent to the establishment of any
grade.    The purchaser of a city lot fronting upon a street
takes it subject to a right in the public to make the
street available for the enjoyment of the easement
therein for which the street was originally dedicated;
but we are not aware that it has ever been held, where
the foregoing constitutional provision prevailed, that
the public had a right to establish any grade it might
choose, irrespective of the damage such owner might
sustain.    This right to establish a grade in the street is
attended with the corresponding obligation imposed by
the constitution, to make compensation for any damage
to the private property which may be caused by the
public in its exercise of the right.    It may be conceded
that the dedication of a street carries with it the right to
make such a reasonable grade as will adapt it for use, for
in such a case the grading of the street would have the
effect to increase, rather than to diminish, the value of
the lots adjacent thereto by making them accessible to
the public; but if the municipality deems it desirable
to establish a grade which will result in a damage rather

than a benefit to the lots, the owner is entitled to compensation for the amount of this damage.   The establishment of the grade is for the benefit of the public rather than of the adjacent owner, and if, in establishing such grade, the owner suffers damage, his property has been damaged "for public use."   In *City of Elgin* v. *Eaton*, 83 Ill. 535, 25 Am. Rep. 412, the street fronting the plaintiff's property was graded for the first time to a line about six feet below the ground on which his house stood, and the court held that the city was liable for any damage sustained thereby, saying: "It is urged that a municipal corporation is not liable for damages growing out of grading their streets.   That was no doubt true before the adoption of our present constitution.   Article II, section 13, declares that private property shall not be taken or damaged for public use without just compensation.   Now, this was private property, and the improvement was being made for public use; and if the property was damaged thereby, appellee is entitled to just compensation for such damage; if injury was sustained, it was for public use."   And in *Bloomington* v. *Pollock*, 141 Ill. 351, the same court said: "We are unable to see any sound legal ground for a distinction between cases where the damage is done under an ordinance which changes the grade of a street, and cases where the damage is done under an ordinance which for the first time establishes the grade."   (See, also, *Borough of New Brighton* v. *United Presbyterian Church*, 96 Pa. St. 331; *Hendricks' Appeal*, 103 Pa. St. 358; *Jones* v. *Borough of Bangor*, 144 Pa. St. 638; *Davis* v. *Missouri Pac. Ry. Co.*, 119 Mo. 180; *Hickman* v. *City of Kansas* (Mo. Feb. 13, 1894), 25 S. W. Rep. 225.)

The damage sustained by the plaintiffs was caused by the actual grading of the street, and not by the ordinance fixing the grade.   (*Jones* v. *Borough of Bangor*, 144 Pa. St. 638; *O'Brien* v. *Philadelphia*, 150 Pa. St. 589; 30 Am. St. Rep. 832.)   Until the physical condition of the street was changed their lot had received no actual damage for public use.   The enactment of the ordinance

rendered it possible that the street would at some time be reduced to that grade, but a mere paper change of grade did not affect the condition of the lot or impair its use or enjoyment.   Any diminution in value that it might sustain from the mere passing of the ordinance was purely speculative and contingent upon the time when grading should be done, and would no more constitute the damage contemplated by the constitution than would a diminution in its value resulting from excessive taxation or the creating of a municipal debt. Hence, the court did not err in refusing to permit testimony as to the damage caused by the adoption of the ordinance.   Nor was the benefit that might be derived from the construction or operation of the defendant's railroad material to the issue.   The use to which the street might be put by the defendant after the excavation had been made did not affect the damage caused to the lot by the excavation.

The plaintiffs were entitled to recover in this action the entire damage which their lot had sustained by the act of the defendant in making the excavation in the street.   (*Lake Erie etc. R. R. Co.* v. *Scott*, 132 Ill. 429; *City of Denver* v. *Bayer*, 7 Col. 113.)   The action was not for any personal damage that the plaintiffs had sustained, prior to the action, by reason of the interruption that they had sustained in their access to the lot, nor for damages resulting from an unlawful or unauthorized use of the street by the defendant, but it was for the damages which had been done to the lot itself by the permanent change in the street.   These damages do not depend upon any subsequent use of the lot, but were complete when the grade was changed, and could be recovered in this action.

For the purpose of ascertaining the amount of damage that the plaintiffs had sustained, witnesses were asked, " What effect did the cut have upon the value of the property? " and, upon replying that its effect was to depreciate the value, they were then asked, " To what extent? " and in reply stated the amount.   These ques-

tions were objected to by the defendant upon the ground that they were incompetent, irrelevant, and immaterial, and it is now urged that the opinions of the witnesses should have been limited to the market value of the property before and after the grading was done, and that the jury should have drawn its conclusion of the amount of damage from such evidence rather than from the opinions of the witnesses.   If this special objection had been made at the trial, the plaintiffs could have asked the questions in such a form as to obviate the objection; but it is well settled that, unless the evidence is inadmissible for any purpose, a party is not at liberty under this general objection afterwards to urge a special objection, which goes merely to the form of the question by which the evidence is sought.   (*Crocker* v. *Carpenter*, 98 Cal. 418.)   The extent to which the property was damaged by the grading was the precise issue in controversy, and evidence tending to establish the amount of that damage was neither incompetent, nor irrelevant, nor immaterial.   The inquiry of the witnesses respecting the value of the property would of itself, in the absence of any qualifying term, imply the " market value," and it was open for the defendant upon cross-examination to show that their opinion referred to some associate value. The subsequent question respecting the " extent" to which its value had been depreciated was but another mode of inquiring what was its market value after the grading, and the defendant had the same opportunity of testing by cross-examination the weight and accuracy of the replies to this question, or to show by other testimony that the value of the property had been increased by the grading, or that its depreciation was attributable to other causes than the grading.

The judgment and order are affirmed.

GAROUTTE, J., FITZGERALD, J., and DE HAVEN, J., concurred.

McFARLAND, J., dissented.

BEATTY, C. J., dissenting.—I dissent.   When the tract of land embracing these lots was by the owners laid off into streets and squares, the plat recorded and the lots sold by reference to such recorded plat, the streets were thereby dedicated to the public, and this dedication carried with it an implied consent, binding upon the owner and its successors, that the streets might be properly graded to fit them for the purpose for which they were dedicated.   Such consent was a waiver of any claim for damages to abutting lots by reason of a proper grade. Here the city has established a grade, which, so far as appears, is, with reference to the whole tract, entirely reasonable and proper, although it is an injury to these particular lots, and the defendant, in laying its track, has been required to conform to the grade so established. The owners, in my opinion, have no claim for damages for bringing the street to the established grade.

*Corcoran* v. *Benicia,* 96 Cal. 1, 31 Am. St. Rep. 171, seems to me to be in direct conflict with the decision here.

Rehearing denied.