[Civ. No. 1803.   Third Appellate District.—May 18, 1918.]

THERESA WEISSHAND, as Executrix, etc., Respondent, v. CITY OF PETALUMA (a Municipal Corporation), Appellant.

PLEADING—ACTIONS FOR INJURIES TO PERSON AND PROPERTY—JOINDER IN SAME COMPLAINT.—In view of section 427 of the Code of Civil Procedure, as amended in 1915, a cause of action for damages to property and a cause of action for injury to health may be joined in the same complaint, where both grow out of and are the direct result of the same tort.

ID.—ACTION FOR DAMAGES AND INJUNCTION—JOINDER.—It is not improper to unite a cause of action for damages with a cause of action for injunctive relief.

MUNICIPAL CORPORATIONS—IMPROPER IMPROVEMENT OF CITY STREET—
DAMAGE TO PROPERTY OWNER — PLEADING — IMPROVEMENT UNDER
MUNICIPAL AUTHORITY—SUFFICIENCY OF COMPLAINT.—In an action
against a municipal corporation for injuries to person and to prop-
erty from the improper grading, filling, and improvement of a city
street, the complaint is not subject to the objection that it fails to
show that the work was done under the authority of the defendant,
where it is alleged that the defendant caused the work to be done.

ID.—DAMAGE TO PROPERTY OWNER—LIABILITY OF MUNICIPALITY FOR IM-
PROPER STREET IMPROVEMENT.—A municipal corporation is liable to
a property owner for the flooding of his property from the improve-
ment of a street on which his property abuts, where the work was
done strictly in accordance with plans and specifications adopted
for the work, and such plans and specifications did not provide for
adequate means for taking care of the surface waters which would
accumulate on the property.

ID.—FLOODING OF DWELLING—RAISING TO PROPER HEIGHT—PROPER ELE-
MENT OF DAMAGE.—In an action against a municipal corporation for
damages caused by the alleged flooding of plaintiff's dwelling from
the improvement and grading of a street, the expense necessarily
incident to the raising of the structure to a height preventing the
water from entering the dwelling is an element of damages, notwith-
standing the raising increased the value of the premises.

APPEAL from a judgment of the Superior Court of
Sonoma County.    Emmet Seawell, Judge.

The facts are stated in the opinion of the court.

G. P. Hall, and E. J. Dole, for Appellant.

Fred S. Howell, and W. D. L. Held, for Respondent.

HART, J.—Plaintiff's testator brought the action to recover
damages alleged to have been caused by the improper grading
of a street in the city of Petaluma and the consequent flooding
of his land.    The original plaintiff died and Theresa Weiss-
hand, as executrix of his last will, was substituted as plaintiff.

The general facts as shown by the findings are, in substance,
as follows: The defendant, during the months of June and
July, 1914, by due legal proceedings, authorized and caused
to be graded, filled, and improved Keller Street between Oak
and West Streets, in the said city of Petaluma.    The plaintiff
was the owner of certain premises which abut upon the street
so graded and improved, said premises having a frontage on

said Keller Street of 184 feet, said frontage beginning at the point of intersection of the southerly line of Kent Street with the westerly line of said Keller Street. The plaintiff's said lands extend through the entire block to Liberty Street, and slope downward in a southerly direction from Kent Street in such manner as to cause a small ditch or gully over and upon plaintiff's said lands, and into which, "for time immemorial," the flood waters and drainage of plaintiff's land flowed in an easterly direction from the said lands and over and across said Keller Street. Said ditch or gully formed a natural watercourse over and across Keller Street and by it, for many years prior to the improvement of Keller Street as above stated, the plaintiff's lands were thoroughly drained. These lands were suitable for and adapted to agricultural purposes, and, for many years prior to the improvement mentioned and down to the winter of 1914, the plaintiff had cultivated, raised, and harvested on said lands crops of green vegetables and potatoes and had maintained thereon a full-bearing orchard, consisting of pear, apple, and prune trees, and harvested crops of fruit therefrom.

In the grading, filling, and improvement of said Keller Street, the defendant, or the contractor to whom the contract for performing said work of improvement was awarded, filled up, dammed, and thus obstructed the lower end of said "ditch, gully, and natural watercourse," and raised the said dam to the height of twenty-one feet, "which said fill extended across the entire lower and easterly side of plaintiff's lands and premises and abutted thereon. That the plans and specifications adopted by said defendant for the doing of said street improvement work on Keller Street make no provision for any bulkhead or retaining wall to hold or retain the said fill, and to prevent the same from caving in or sliding on to the lands of adjoining private property owners, and accordingly it was impossible to do the said work without extending the said fill, at the base thereof, at least twenty-five or thirty feet on to the lands of private property abutting upon said Keller Street, on either side thereof, including the said lands of plaintiff. That the contract for doing said work, which was duly accepted and let by said defendant, provided for a culvert seventy feet in length. That a culvert of such length was obviously unfit and insufficient for any purpose whatever, for the reason that in doing said work according to the

plans and specifications it was necessary to encroach upon the property of abutting private owners at least twenty-five feet at the base of the fill on either side of the street, in order that the surface of said street twenty feet above the lowest point of the fill could be held in place. Hence it was apparent at the time of the doing of said work and of the adoption of the said plans and specifications and the letting of the contract for the doing of said work, that a culvert or drain at least 120 feet in length was necessary in order that it might extend through the toe of the fill and thus permit the intake of water from the said ditch or gully on plaintiff's lands, and the exit on the other side of the street opposite to plaintiff.''

The defendant failed to provide or construct a culvert, conduit, or other adequate means for carrying away the flood waters and drainage from plaintiff's lands and premises as the same had theretofore been carried away for many years by means of the said natural watercourse. The result of the fill and the obstruction so caused by the defendant and its failure or omission to provide a sufficient or adequate culvert or conduit whereby the surface waters could be carried away was to flood and inundate the lands and premises of plaintiff to the depth of approximately ten feet during the winters of the years 1914 and 1915, thereby causing to form on said premises a lake or mud pond, which remained upon said lands during the summers of 1915 and 1916. In the summer months of the years 1915 and 1916 said lake or pond ''became filthy and contaminated with slime and scum and disease producing bacteria, and created a stench offensive to the smell and dangerous and injurious to human health.'' By reason of the unsanitary and unhealthy condition arising from said polluted lake or pond the premises of plaintiff have been greatly deteriorated in value as residence lots, into which the plaintiff intended to divide said premises and so sell the same when he bought said premises long prior to the time at which said Keller Street was graded and improved under the authority and by the direction of defendant; and, because of the flooding of his premises as the result of said grading and improvement of Keller Street and the obstruction of the said natural watercourse as a result thereof, he was compelled to raise his dwelling-house several feet in order to prevent the surface waters accumulating upon his premises from flowing therein; that, by reason of the conditions above described and which

were created by the acts of the defendant in grading and improving Keller Street and in omitting to establish adequate means for carrying off the surface waters from and draining said premises, the plaintiff has been deprived of the use of his said premises for raising and harvesting fruits and vegetables thereon; that his orchard has been destroyed; that the waters standing upon plaintiff's lands and premises as aforesaid, during the summers of 1915 and 1916, became stagnant and contaminated, and said unhealthy condition of said lands "is liable to subject plaintiff to continuing damage, and is dangerous to public health in the neighboring district."

While the plans and specifications adopted by the defendant for the grading and improvement of Keller Street did provide for an eight-inch corrugated iron culvert seventy feet in length at the bottom of the fill, yet, so the court found, "from said plans and specifications it was obvious that a culvert of such length and size was wholly inadequate and would serve no purpose whatever, for the reason that the plans as adopted for such improvement would reasonably have required a bulkhead or retaining wall to prevent said street from caving in or sliding on to the lands of adjoining property owners, or in the absence thereof would reasonably have required a drainpipe of at least 120 feet in length in order that the intake and outlet thereof would have cleared the toe of the embankment so as to have permitted water to flow through the same."

The defendant demurred to the complaint on both general and special grounds. The special grounds of demurrer involve, among other special objections, an attack upon the complaint for the reason, as set forth in the demurrer, that there are therein several causes of action improperly united and not separately stated. The particular objection on special grounds is that a cause of action for injury to property and a cause of action for personal injury are united in said complaint; and also that a cause of action for damages is improperly united with a cause of action for an injunction.

The demurrer having been overruled, the defendant answered by denials of the material facts stated in the complaint, and by an amendment of the answer set up a special defense by way of an estoppel, it being alleged that the plans and specifications adopted by the defendant for the construction of the work referred to above provided an ample drain for carrying away the surface waters from plaintiff's lands and

for the placing of the said drain in a proper place to accomplish that purpose; that the same was suitable and proper to carry away all of said surface waters, but that the plaintiff requested the contractor and superintendent of streets to change and alter, and upon such request the latter did change and alter, the location of said drain-pipe and place the same at an elevation above the location adopted by said defendant; that plaintiff requested and directed said contractor to dump and deposit the unused dirt and earth caused by the construction of said street on to his land on the west side of Keller Street, and at the request of plaintiff said contractor did dump and deposit a large quantity of dirt and earth thereon, by reason whereof the end of said drain-pipe was filled up.

The court found that the damage suffered by the plaintiff amounted in money to the sum of $475, of which the sum of one hundred dollars constituted the expense necessarily incurred in raising plaintiff's dwelling-house to a height which would prevent the flowing of the surface or flood waters therein.

Judgment was entered accordingly and also that the defendant be required to place a suitable drain or culvert of such size and length through and over Keller Street as will effectually drain and carry away the surface waters from plaintiff's lands.

The appeal is prosecuted by the defendant from said judgment.

As to the special defense that the plaintiff consented to and directed the change in the location of the drain-pipe and instructed the contractor and superintendent of streets to deposit the unused earth upon his premises, the court found "that the plaintiff did not request or instruct the contractor or superintendent of streets or any other person to change or alter the proposed location of said drain-pipe or to place the same at an elevation above that adopted by said defendant in the plans and specifications; that the said drain-pipe was not located and placed in the position where the same now is, to wit, at a point one foot above the lowest part of plaintiff's premises, at the special instance and request of plaintiff; that plaintiff did not request or direct the said contractor or any other person to dump or deposit the unused earth and dirt caused by the construction of said street on his said lands on the west side of Keller Street."

The first point urged for a reversal grows out of the order overruling the demurrer. The defendant claims that the complaint is clearly amenable to the objection that in it are improperly united a cause of action for injury to property and a cause of action for injury to person. It is further claimed, as seen, that it is obnoxious to the same objection because a cause of action for damages and a cause of action for injunctive relief are united.

Section 427 of the Code of Civil Procedure, as amended by the legislature of 1915 (Stats. 1915, p. 30), provides, among other things, that "Causes of action for injuries to person and injuries to property, growing out of the same tort, may be joined in the same complaint, and it is not required that they be stated separately." It is clear from the averments of the complaint that the two causes of action—one for damages to property and the other for injury to health—grew out of and are the direct result of the same tort; hence the objection to the complaint upon that ground is obviously without force.

Nor was it improper to unite a cause of action for damages with a cause of action for injunctive relief. That a party is entitled to sue for any relief which properly comes within the facts stated in his pleading is an elementary rule in our practice and procedure. The specific relief asked for is in the nature of a mandatory injunction. The complaint clearly enough discloses by its averments that if the condition existing on plaintiff's premises which was created by the manner in which the street was authorized and caused to be improved by the defendant continued, it would result not only in permanent injury to plaintiff's freehold but would operate as a continuing menace to the health of the plaintiff and the people of the neighborhood of the premises affected; and from the averments of the complaint it is clear that the condition in which the defendant left the premises of the plaintiff could be corrected or changed so that neither the property nor the health of plaintiff and others residing in his neighborhood would be injured.

There is nothing said in *Rooney* v. *Gray Bros.*, 145 Cal. 753, [79 Pac. 523], which militates against the conclusion thus announced.

The demurrer on special grounds was properly overruled.

It is next contended that the general demurrer should have been sustained for the reason that the complaint does not dis-

close that the grading and the improvement of Keller Street was done by the defendant and that it is responsible for the damage to plaintiff's property. The complaint merely alleges that the defendant *caused* the work to be done. We think that this allegation was sufficient to indicate that the work was done under the direct authority of the defendant. The case of *Krause* v. *Sacramento*, 48 Cal. 221, cited by the appellant, does not support the view that the complaint in this case should fall because it fails directly to state that the work was done by the direct authority of the defendant, although such a statement, it must be admitted, would have improved that pleading. At the time of the decision of the Krause case (see, also, *O'Hale* v. *Sacramento,* 48 Cal. 212), the charter of the city of Sacramento provided that the work of improving streets and constructing sewers should be done by contract, except in certain cases as to the first-mentioned character of street improvement where the street commissioner might have required the work to be done by the owners of abutting lots. Under the present general state laws authorizing the improvement of streets in municipalities, under which the improvement herein involved was admittedly done, power is expressly conferred upon the governing or legislative boards or bodies of municipalities to order such work to be done according to plans and specifications prepared under their direction and adopted by them. Therefore, in considering the complaint here, we must view it by the light of the power vested by law in the defendant as a municipal corporation to authorize such work to be done according to plans adopted by it, and thus viewing the complaint the averment that the defendant caused the work complained of herein to be done plainly means that the work was done by its direction and according to plans and specifications adopted by it for that purpose.

It is further insisted, however, that under no view of the evidence can the defendant be held liable for the damages claimed by the plaintiff in the complaint. But, in so far as this proposition involves the question of the sufficiency of the evidence to support the findings, there is no proper record for the review thereof. The form of the record here is not a statement on appeal, for, as we will show, there is now no statement on appeal. Nor is it a bill of exceptions, because it is wanting in one of the essential requisites of a bill of exceptions, viz., a specification of the particulars wherein it

is claimed that the evidence is insufficient to justify the decision. (Code Civ. Proc., sec. 648; *Coveny* v. *Hale*, 49 Cal. 552; *Watson* v. *San Francisco H. B. R. Co.*, 50 Cal. 523; *Bonner* v. *Quackenbush*, 51 Cal. 180; *Eltzroth* v. *Ryan*, 89 Cal. 135, 140, [26 Pac. 647]; *Winterburn* v. *Chambers*, 91 Cal. 170, 185, [27 Pac. 658]; *Commercial Bank* v. *Redfield*, 122 Cal. 405, [55 Pac. 160, 772]; *Estate of Behrens*, 130 Cal. 416, 418, [62 Pac. 603].)

This action was instituted in the month of July, 1916. The legislature of 1915 so amended the procedure as to the preparation of records on appeal that, at the present time and at the time this action was commenced, there is and was no provision in our law for a "statement on appeal." (See Stats. 1915, pp. 201–207, inclusive.) The result is that, since the changes made by the legislature of 1915 above referred to, there are two methods only whereby the evidence may be brought up for consideration and review, on appeal, to wit: 1. By a bill of exceptions, as provided by sections 648 and 650 of the Code of Civil Procedure; 2. Under what is commonly known as the alternative method, as provided by section 953a of said code.

It is obvious that the record here was not prepared in pursuance of the provisions of section 953a. Indeed, it is not pretended that the record was prepared under said section, but, to the contrary, counsel designate it as a "statement on appeal after a denial of motion for a new trial, made on the minutes of the court." But, as shown, there is no such a record on appeal now, and the record here was evidently intended as a bill of exceptions and is, in legal effect, if anything at all, a purported bill of exceptions; but, as stated, is fatally deficient as such in that the particulars in which it is claimed that the evidence does not support the findings are not specified as required by the code section above named.

Nor is appellant aided in the matter by its notice of intention to move for a new trial, since therein it has also failed specifically to point out the particulars in which it claims the evidence is insufficient to justify the decision. And a general specification is insufficient where there is more than one finding. (See cases above cited and also *Matter of Baker*, 153 Cal. 537, 541, [96 Pac. 12]; *Hawley* v. *Harrington*, 152 Cal. 188, [92 Pac. 177]; *Meek* v. *Southern Cali-*

*fornia Ry. Co.,* 7 Cal. App. 606, [95 Pac. 166] ; *Dawson* v. *Schloss,* 93 Cal. 194, [29 Pac. 31] ; *De Molera* v. *Martin,* 120 Cal. 544, 546, [52 Pac. 825].)

It follows that it must be assumed by this court that all the findings of fact have been correctly found or were based on sufficient evidence. (*Winterburn* v. *Chambers,* 91 Cal. 170, 185, [27 Pac. 658].)

But the point made by the appellant that the defendant is not, under the facts, liable for the damage sustained by the plaintiff may be considered by reference to the facts as found by the court and certain admissions by the defendant.

The contention is that the case here falls within the rule enunciated and applied in the case of *Sievers* v. *San Francisco,* 115 Cal. 648, [56 Am. St. Rep. 153, 47 Pac. 687]. In that case a contract had 'been let, after due legal proceedings by the authorities, to grade Van Ness Avenue, in the city of San Francisco, to the ''official grade,'' which was seventy-five feet above base. A futile attempt had been made by the supervisors to change the grade to eighty-three feet above base. The city engineer and surveyor, whose duty it was to furnish grade lines and levels (Stats. 1891, p. 206), assumed eighty-three feet to be the official grade, and the contractor filled in accordingly. The result of going beyond the true grade was to dam a well-defined channel through which surface water had always flowed and back the water upon the land of plaintiff, doing the damage complained of. It was conceded that no such consequence would have followed the grading of the street to the official grade of seventy-five feet above base. Action against the city of San Francisco was brought by plaintiff for the damage thus occasioned to his premises, the complaint averring that the city wrongfully caused and procured the crossing to be filled with soil, sand, and rock to a height of eighty-three feet above base. A nonsuit was granted by the trial court upon the showing thus made and an appeal from the judgment of nonsuit was rejected by the supreme court. The court in that case said:

''It does not appear that the supervisors, in any of their proceedings, called for any grading except 'to the official grade and line.' The bids were received under this call, and the contract ran in the same language. Precisely as in *Warren* v. *Riddell,* 106 Cal. 352, [39 Pac. 781], the con-

tractors, through error induced by the city surveyor, or superintendent of streets, or by both, graded six or eight feet above the line called for by the contract. The extra six or eight feet of filling, which alone it is admitted caused the injury, were not placed under any contract with, or directions from, the city. The case, then, differs radically from the many cited and relied upon by appellant, where the injury has resulted from work done for, and as directed by, the municipal authorities. Thus, in *Reardon* v. *San Francisco,* 66 Cal. 492, [56 Am. Rep. 109, 6 Pac. 317], the injury resulted from street filling done exactly in accordance with the contract. In *Conniff* v. *San Francisco,* 67 Cal. 45, [7 Pac. 41], Montgomery Avenue was graded as the city directed. But the work dammed a natural watercourse, and the city was held responsible for the resulting injury to property. In *Spangler* v. *San Francisco,* 84 Cal. 12, [18 Am. St. Rep. 158, 23 Pac. 1091], the city had diverted the waters flowing in a natural waterway into a sewer, and had negligently permitted the sewer to fall into a defective condition, whereby the escaping waters caused damage, for which the city was held liable. In *Eachus* v. *Los Angeles Ry. Co.,* 103 Cal. 614, [42 Am. St. Rep. 149, 37 Pac. 750], the grading was properly done to the official grade, but, for resulting damages, defendant was held responsible. In *Tyler* v. *Tehama County,* 109 Cal. 618, [42 Pac. 240], a bridge was built as and where the supervisors directed. But it was constructed upon private property, for the injury to which the owner received compensation.

"In all of these cases, the act or omission had the sanction, express or implied, of the municipal authorities. In the case at bar, the injury resulted from the act of the contractor, neither contemplated nor called for by the supervisors."

In this case the findings disclose, as above shown, that the work of improvement was done strictly in accordance with plans and specifications adopted by the defendant for the work, but that said plans and specifications did not provide for adequate means for taking care of the surface waters accumulating on plaintiff's lands. Moreover, counsel for defendant, at the trial, stipulated that the work was done by the contractor according to said plans and specifications, and in their brief on file herein practically admitted such to be

the fact in the following language: "The work done on Keller Street which resulted in the damming up of the so-called watercourse on the Weisshand property was a work of public improvement done under the general laws of the state of California. All of the proceedings leading up to the work were legal and regular in character. The contract was let and the work was to be done in accordance with plans and specifications adopted by the council of the city of Petaluma."

It is nowhere made to appear that the improvement was not done in accordance with the plans and specifications adopted by the defendant therefor. Herein, therefore, lies the distinction between the Sievers case, relied upon by the appellant, and the present case. The facts of the case here, in other words, bring it within the doctrine announced in *Reardon* v. *City of San Francisco*, 66 Cal. 492, [56 Am. Rep. 109, 6 Pac. 317], *Conniff* v. *San Francisco*, 67 Cal. 45, [7 Pac. 41], *Spangler* v. *San Francisco*, 84 Cal. 12, [18 Am. St. Rep. 158, 23 Pac. 1091], *Eachus* v. *Los Angeles Ry. Co.*, 103 Cal. 614, [42 Am. St. Rep. 149, 37 Pac. 750], and *Tyler* v. *Tehama County*, 109 Cal. 618, [42 Pac. 240], all cited in *Sievers* v. *San Francisco*, 115 Cal. 648, [56 Am. St. Rep. 153, 47 Pac. 687], and therein differentiated from the Sievers case upon precisely the same reason that the latter case is to be differentiated from this.

In *Perkins* v. *Blauth*, 163 Cal. 782, 789, [127 Pac. 50, 53], the court said: "Upon the other hand, if the act is one commanded by the municipality itself, if inherently wrong, the municipality and the agent who performed will both be liable." Again, in that case, the court, at the same page, says: "One important principle, however, is to be noted in this connection. Wherever the injury complained of is the taking or *damaging* of private property for public use without compensation, then under the guaranty of the federal constitution against such invasion of the private rights of property, neither the state itself nor any of its agencies or mandatories may claim exemption from liability. (Amendment Const. U. S., art. V; *Hopkins* v. *Clemson College*, 221 U. S. 636, [35 L. R. A. (N. S.) 243, 55 L. Ed. 890, 31 Sup. Ct. Rep. 654].)"

And it might therein have been added, as we here suggest, that such invasion of the private rights of property is

also violative of section 14 of article I of our own state constitution, upon which the right of a person to be compensated in damages for injury to his freehold resulting from the act of a municipality in making a public improvement was sustained in *Reardon* v.; *City of San Francisco, supra,* and in the other cases above named.

The point as to an estoppel is covered by what is said above, that "all findings of fact against which the bill of exceptions contains no specification of their being unsupported by the evidence," we are authorized to presume derive sufficient support from the evidence.

The same reply is to be returned to the contention that the amount of damages awarded by the jury is excessive.

The points last made are as to rulings of the court admitting certain evidence. These rulings we have examined and have not found them subject to the objections urged against them.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 17, 1918, and the following opinion then rendered thereon:

THE COURT.—Petitioning for a rehearing of this cause, counsel for the appellant insist that we were mistaken in the statement contained in the former opinion filed herein that "the court found that the damage suffered by the plaintiff amounted in money to the sum of $475, of which the sum of one hundred dollars constituted the expense necessarily incurred in the raising of plaintiff's dwelling-house to a height which would prevent the flowing of the surface or flood waters thereon."

It is argued that the reference by the trial court in its findings to the raising of the house, at a cost of one hundred dollars, "is not a finding as to damage, for the reason that the property may have been worth more after the house was raised at this expense than it was even before the alleged flooding." It is further contended that the alleged finding in the conclusions of law that "plaintiff had been damaged in the sum of $475 is purely a conclusion of law which must

be drawn, if drawn at all, from a reading of the findings of fact and conclusions of law in their entirety.''

As to the first proposition, a ready reply thereto is that it can make no difference what the effect of raising the dwelling-house upon its value was, if, as the court found, the raising of the house and the expense necessarily incident thereto were absolutely required to prevent the overflow water from entering the dwelling. If a man purposely or negligently sets fire to another's house, and it is wholly or only in part destroyed, it would obviously be no answer to a claim against the wrongdoer for damages for causing the injury so inflicted to say or show that, in rebuilding the house or patching up the portions burned, the owner had thereby become the possessor of a better house than he had before the fire.

With respect to the second proposition, it is to be observed that, while the specific finding of the total damage suffered by the plaintiff is among the ''conclusions of law,'' the finding may nevertheless be treated as a finding of fact as well as a conclusion of law. Counsel in their petition concede that ''a finding of fact, even though improperly included in what is generally denominated 'conclusions of law,' will be held to be, nevertheless, a finding of fact, if it is in fact clearly and unequivocally made.'' But it is contended that the finding is equivocal, and it is argued that ''where it is equivocal, and may be either a finding of fact or a conclusion of law, the appellate court will not take it out of the place where it was put by the trial court, but will give it the same effect as the trial court gave it,'' citing *Figg* v. *Mayo*, 39 Cal. 265, where it is said: ''In such cases, where the facts are so obscurely found or are so blended with legal conclusions as to render it doubtful whether the facts are only hypothetically stated, we must disregard it as a finding of fact.''

There is nothing equivocal or obscure in the finding in question. Particularly is this true when viewing it in connection with the specific finding that the trees, orchard, vegetables, etc., were damaged by the acts of the appellant, in addition to the damage of one hundred dollars, suffered by reason of being compelled to raise the dwelling, as above indicated. It involves an unobscure, unequivocal statement that, for all the damage specifically found to have been in-

flicted upon his property, the plaintiff had suffered in the aggregate damages in the sum of $475. This sum is far below that claimed in the complaint, and, so far as we may determine from the findings, the amount found as damages is not excessive. But, to support the judgment, we do not think it absolutely necessary that the findings should contain a segregation of the several items of damage alleged in the complaint, in the absence of a request for such segregation. (*Foley* v. *Martin,* 142 Cal. 260, 261, [100 Am. St. Rep. 123, 71 Pac. 165, 75 Pac. 842].)

Of course, our conclusion here is not to be accepted as an unqualified approval of findings of the character of those in the present case, where, as here, there are presented by the pleadings several different issues upon the matter of the damage complained of. Still, we cannot persuade ourselves that, conceding, for the sake of the argument, that the findings should have been more specific as to the damages suffered by the plaintiff, the appellant has been prejudiced thereby, since the findings clearly show that the plaintiff's property was seriously damaged by the acts of appellant and since, furthermore, the damages awarded are far below those claimed. (Code Civ. Proc., sec. 475.)

We are satisfied with the conclusion announced in our former opinion in other respects.

The petition is denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 15, 1918.